76 F.3d 292
 96 Cal. Daily Op. Serv. 911, 96 Daily Journal
D.A.R. 1457
Robert CHUMAN; Nancy Woo; Kyle Townson, Plaintiffs-Appellees,
v.
Craig A. WRIGHT; City of Los Angeles; Charles Duke, Defendants,
and
Mark P. Fronterotta, Defendant-Appellant.
Robert CHUMAN; Nancy Woo; Kyle Townson, Plaintiffs-Appellants,
v.
Craig A. WRIGHT; Defendant,
and
City of Los Angeles; Charles Duke; Mark P. Fronterotta,
Defendants-Appellees.
 Nos. 94-55404, 94-55469.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 18, 1995.
Decided Feb. 8, 1996.
 
 Howard R. Price, Brodey & Price, Beverly Hills, California, for plaintiffs-appellees-cross-appellants.
 Edwin A. Lewis and Craig J. Miller, Overlander, Lewis & Russell, Pasadena, California, for defendants-appellants-cross-appellees.
 Before: HUG and LEAVY, Circuit Judges; MUECKE,* District Judge.
 OPINION
 HUG, Circuit Judge:
 
 
 1
 The plaintiffs filed this 42 U.S.C. § 1983 action against various law enforcement officers alleging Fourth Amendment violations during the execution of a valid search warrant. The jury found against only two defendants, one of whom subsequently settled with the plaintiffs. The remaining defendant, Mark P. Fronterotta, contends that the court erred in failing to grant him qualified immunity and in giving improper instructions to the jury. He also contends that he is entitled to an offset of attorneys' fees due to the other officer's settlement with the plaintiffs. The plaintiffs contend on cross-appeal that the court erred in ordering remittitur of their punitive damages award. We have jurisdiction under 28 U.S.C. § 1291. We conclude that the court erred in giving an improper jury instruction and that the error was not harmless. Therefore, we do not reach the remaining issues.
 
 I.
 BACKGROUND
 
 2
 On May 11, 1989, approximately 60 officers from various law enforcement agencies executed a valid search warrant on the home of Robert Chuman. Chuman's girlfriend, Nancy Woo, lived in the residence at that time. Kyle Townson lived in a guest home in the back of the residence. A SWAT team forcibly entered the residence using flashbang devices. The plaintiffs were removed from their home prior to the search and were not allowed to witness the search. Each defendant denied that any act or conduct of his deprived the plaintiffs of their constitutional rights. Some officers suggested that Chuman himself caused the damage after the officers left. The damage consisted of 56 broken windows, torn paneling from walls, holes in the floor and ceiling, and destroyed personal items. No evidence was found and no arrest was made. The plaintiffs brought this action against the individual officers, the City of Los Angeles, and the City of Inglewood, alleging that the officers used unreasonable and excessive force in executing the warrant, thereby violating their Fourth Amendment rights.
 
 
 3
 Although originally not a defendant, Mark Fronterotta was added to the complaint with two other Inglewood officers. All three Inglewood defendants moved for summary judgment on the ground of qualified immunity, which the district court denied. We affirmed the district court's denial of summary judgment in an unpublished memorandum disposition, concluding that the law was clearly established that excessive force in the execution of a valid search warrant may violate the Fourth Amendment but that a triable issue existed as to whether a reasonable officer executing a warrant in the manner alleged by the plaintiffs was reasonable and proper. Chuman v. Wright, 980 F.2d 736 (9th Cir.1992).
 
 
 4
 The case proceeded to trial before a jury. Prior to instructing the jury, the district court granted qualified immunity to all defendants who did not enter the home or participate in the search. The court delayed ruling on immunity for the other defendants until after the jury reached its verdict. The court submitted a special verdict form to the jury in which the jurors were asked, in regard to each plaintiff separately, whether any defendant violated the plaintiffs' civil rights; if so, which defendant; and finally, the amount of compensatory and/or punitive damages to be awarded against those defendants. The jury found that only Fronterotta and Craig Wright violated the plaintiffs' civil rights. The court then denied qualified immunity to Fronterotta and Wright.
 
 
 5
 The plaintiffs were awarded the following damages against Fronterotta: $11,667 in compensatory and $25,000 in punitives to Robert Chuman; $0 in compensatory and $20,000 in punitives to Nancy Woo; and $0 in compensatory and $15,000 in punitives to Kyle Townson. The court reduced Woo's and Townson's punitives to $5,000 each after remittitur. The plaintiffs were also awarded $210,000 in attorneys' fees on a joint and several basis. Fronterotta requested the court to allocate the fees, but the court denied this request. Subsequent to the filing of this appeal, Wright settled his case with the plaintiffs. Only Fronterotta's appeal remains.
 
 II.
 IMPROPER JURY INSTRUCTIONS
 
 6
 Fronterotta contends that the district court erred in giving two instructions to the jury that indicated liability on behalf of Fronterotta even if he was not an individual tortfeasor. He contends that the instructions were improper and misleading. We conclude that the instruction regarding "team effort" liability was improper. It is unnecessary that we reach the other instruction given.
 
 
 7
 Initially, the plaintiffs assert that Fronterotta waived this issue because he neither timely nor properly objected. We do not agree. After a careful review of the record, we conclude that Fronterotta properly objected to both instructions. Thus, the issue is not waived.
 
 
 8
 Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading. Fikes v. Cleghorn, 47 F.3d 1011, 1013 (9th Cir.1995). Whether a jury instruction properly states the elements to be proved at trial is a question of law which we review de novo. See Gizoni v. Southwest Marine Inc., 56 F.3d 1138, 1142 (9th Cir.) cert. denied, --- U.S. ----, 116 S.Ct. 381, 133 L.Ed.2d 304 (1995). If a jury instruction is erroneous, we will reverse the judgment unless the error is more probably than not harmless. Larez v. Holcomb, 16 F.3d 1513, 1516-17 (9th Cir.1994).
 
 The court instructed the jury that:
 
 9
 Concerning the search of the residence, if you find the searches were conducted in an unreasonable manner, then no matter whose actions ultimately inflicted the plaintiff's injury, when the deprivation of the rights is the result of a "team effort," all members of the "team" may be held liable.
 
 
 10
 This instruction was based on a Fifth Circuit case, Melear v. Spears, 862 F.2d 1177 (5th Cir.1989). In Melear, the defendant-officer was found liable under section 1983 for his participation in a warrantless search of an apartment building without probable cause. Among other arguments, the defendant argued that he could not be held liable under section 1983 because he participated "less actively" in the search than the other officer and that he did not commit physical damage. Id. at 1186. The Fifth Circuit disagreed. It concluded that "[h]e was a full, active participant in the search, not a mere bystander." Id. "Because the jury could properly have found that the search was unconstitutional, it was also justified in finding both officers liable for their integral participation in the violation." Id.
 
 
 11
 At the outset, we note that nowhere in Melear did the court use the term "team effort" as it was put forth in the instruction. That term was added by the district court in this case. Second, we do not read Melear to allow group liability in and of itself without individual participation in the unlawful conduct. To the contrary, the Fifth Circuit required that the jury find the officers liable for their "integral participation" in the unlawful conduct. Being a mere bystander was insufficient. See id. at 1186. See also James ex rel. James v. Sadler, 909 F.2d 834, 837 (5th Cir.1990) (holding that under Melear, the backup officers' conduct, who merely remained armed during the search, was "integral to the search" and made them participants rather than mere bystanders). Thus, the initial problem with the instruction as given is that it deviated from the "integral participation" standard in Melear and was expanded to include liability based on team effort alone. We doubt that the Melear court intended such an expansive holding.
 
 
 12
 The underlying problem with a "team effort" theory is that it is an improper alternative grounds for liability. It removes individual liability as the issue and allows a jury to find a defendant liable on the ground that even if the defendant had no role in the unlawful conduct, he would nonetheless be guilty if the conduct was the result of a "team effort." This liability is much broader than allowed in Melear, which required at least an integral participation by the offending defendant. In essence, the "team effort" standard allows the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct. The instruction is erroneous and it is not harmless error because the jury may have found liability on the improper ground. See Larez, 16 F.3d at 1516-17.
 
 
 13
 REVERSED and REMANDED for a new trial.
 
 
 
 *
 Honorable C.A. Muecke, Senior United States District Judge for the District of Arizona, sitting by designation