83 F.3d 428
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Janet SHERMAN, Plaintiff-Appellant,
and
Richard Sears; Sandra Sears, Plaintiffs,
v.
Cois BYRD; Steven C. Bailey; John Horton; Don Anderson;
Sheriff Andrews, Riverside County Sheriff; Guy Kestell;
Allen Paine; Dave Pike; Steve Kollar; Ken Riding; John
Boyd; Dan Borden; Winston Pingrey; Armando Portales; Gil
Hayes; Bill Walsh; Dave Madden; Guy Benoit; Stan
Johnson; Mike Mott; Charles Varga; Thirty Unknown Named
Riverside County Sheriff Department Officers, all sued in
both their official and individual capacities; County of
Riverside, Defendants-Appellees.
 No. 94-56307.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 5, 1996.
Decided April 24, 1996.
 
 Before: SKOPIL, CANBY, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Janet Sherman appeals the district court's directed verdicts in favor of twenty-eight of the twenty-nine defendants in her 42 U.S.C. § 1983 action alleging that officers of the County of Riverside Sheriff's Department illegally searched her residence, used excessive force, and unreasonably detained her. We have jurisdiction under 28 U.S.C. § 1291. We affirm the district court's directed verdicts in favor of defendant Bailey and the defendant supervisory officers on Sherman's search warrant claims, and the directed verdict in favor of defendant Pike. We reverse the district court's directed verdict in favor of defendants Bailey, Varga and Benoit on Sherman's unreasonable detention claim, however, because a reasonable jury could have concluded that the duration or conditions of Sherman's detention violated the Fourth Amendment.
 
 
 3
 We do not set forth all of the facts relevant to Sherman's claims because the parties are familiar with them. We review de novo the district court's directed verdicts in favor of the defendants. Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994). We view the evidence in the light most favorable to Sherman, drawing all reasonable inferences in her favor. Id. " 'If conflicting inferences may be drawn from the facts, the case must go to the jury.' " Pierce v. Multonomah County, 76 F.3d 1032, 1037 (9th Cir.1996) (quoting Rutherford v. City of Berkeley, 780 F.2d 1444, 1448 (9th Cir.1986)).
 
 I. Sherman's Claim Against Defendant Bailey
 
 4
 Sherman argues that the district court erred in directing a verdict, pursuant to Fed.R.Civ.P. 50(a), in favor of defendant Bailey on her claim that Bailey knowingly included false statements in his affidavit, or did so with reckless disregard, and intentionally misled the magistrate to believe that no other persons besides Alexander resided on the premises.
 
 
 5
 We agree with the district court that there was no evidence that would permit a jury to find that Bailey submitted any false or misleading evidence, or that any information improperly was withheld. Bailey was not required to include all of the information in his possession in his application for the warrant. See United States v. Johns, 948 F.2d 599, 602 (9th Cir.1991) (failure to disclose existence of informant did not undermine finding of probable cause), cert. denied, 505 U.S. 1226 (1992). It is undisputed that the magistrate was aware that there were multiple buildings on the property, and that Bailey informed the magistrate about the CRI's statement that several armed persons besides Alexander resided on the property. Bailey's affidavit also included an attached copy of the "We Tip" anonymous informant intelligence report. There was no evidence that when he applied for the warrant Bailey knew that persons such as Sherman resided in other structures on the premises as Alexander's tenants, or that he became aware of their presence prior to the execution of the warrant. We therefore affirm the directed verdict in favor of Bailey on this claim.
 
 
 6
 II. Sherman's Claim Against the Supervisory Defendants
 
 
 7
 Sherman argues that the district court improperly directed a verdict in favor of supervisory defendants Borden, Boyd, Duke, Dye, Walsh, Wright, Horton, Kestell and Pingrey, and the Monell defendant, Sheriff Byrd, on her claim that they participated in the approval, planning, or execution of the warrant despite the fact that they knew that thirty persons resided in the structures on the premises. Because we have concluded that there was no evidence that the procurement and issuance of the warrant violated the Fourth Amendment, we also affirm the directed verdict in favor of the supervisory defendants. A deprivation of federally protected rights is a prerequisite to supervisory liability in a § 1983 action. See 42 U.S.C. § 1983; Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978).
 
 III. Sherman's Claim Against Pike
 
 8
 Sherman argues that the district court improperly directed a verdict in Pike's favor on her claim that he conducted the search of her trailer and storage shed in an unreasonably destructive manner. We affirm the directed verdict in favor of Pike because the evidence introduced at trial would not have permitted a reasonable jury to return a verdict for Sherman.
 
 
 9
 The destruction of property during a warranted search is not favored, and may violate the Fourth Amendment if it is not " 'reasonably necessary to effectively execute a search warrant.' " United States v. Becker, 929 F.2d 442, 446 (9th Cir.) (quoting Tarpley v. Greene, 684 F.2d 1, 9 (D.C.Cir.1982)), cert. denied, 502 U.S. 862 (1991). Officers executing a warrant occasionally must damage property to perform their duties, Dalia v. United States, 441 U.S. 238, 258 (1979), however, and Pike also is not liable under § 1983 if he damaged Sherman's property through mere negligence. See Bergquist v. County of Cochise, 806 F.2d 1364, 1369 (9th Cir.1986); see also Stone v. Agnos, 960 F.2d 893, 895 (9th Cir.1992) (mere negligence could not support plaintiff's claim that police acted unreasonably in destroying his property).
 
 
 10
 The only property that Pike permanently damaged was Sherman's china dishes, which had sentimental value. The remainder of Sherman's claim was that her trailer was left a mess because Pike did not replace any of the furniture or clothing he moved during the search. Pike testified that narcotics searches must be extremely thorough because small quantities of narcotics can be stored virtually anywhere. He also testified that replacing the things that he moved during the search would have slowed down the search process. At trial, Sherman did not set forth any evidence that Pike's actions were grossly negligent, malicious, or anything other than mere negligence.
 
 
 11
 This evidence would not have permitted a jury to find that the destruction of Sherman's property was caused by other than Pike's mere negligence, or that other aspects of the search were unreasonable under the circumstances. We therefore affirm the district court's directed verdict in favor of Pike.
 
 
 12
 IV. Sherman's Claims Against the Non-Supervisory Officers
 
 
 13
 Sherman argues that the district court erred in directing a verdict in favor of the other officers who were at the scene of the search, but did not directly participate in the search of Sherman's trailer. We affirm the directed verdict in favor of the non-supervisory officers (dubbed "bystander defendants" by the district court) on Sherman's illegal search claim because there was no evidence that the warrant was improperly obtained.
 
 
 14
 Sherman also argues, however, that the non-supervisory officers are liable under § 1983 for her unreasonable detention during the execution of the warrant. We reverse the directed verdict on this unreasonable detention claim as to the particular officers that the evidence indicated may have played a direct role in detaining Sherman or had direct contact with her during her detention.
 
 
 15
 Although the officers could detain Sherman while they searched her trailer, see Michigan v. Summers, 452 U.S. 692, 705 (1981), her detention may have been unreasonable, and thus in violation of the Fourth Amendment, if it was "unnecessarily painful, degrading, or prolonged, or if it involve[d] an undue invasion of privacy." Franklin v. Foxworth, 31 F.3d 873, 876 (9th Cir.1994). The reasonableness of Sherman's detention depends on factors such as "the severity of the crime at issue, whether [Sherman posed] an immediate threat to the safety of the officers or others, and whether [she was] actively resisting arrest or attempting to evade arrest by flight.' " Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989) (emphasis added)).
 
 
 16
 Significant evidentiary conflicts regarding the conditions of Sherman's detention would have permitted a jury to conclude that the detention was unreasonable. As the district court concluded, Sherman's contentions regarding the officers' failure to provide her with food, water, and use of the bathroom are without merit because she testified that she did not actually request these things during her detention on the hill. She did present evidence, however, that her breasts were exposed repeatedly during the detention and that she remained in handcuffs for six hours.
 
 
 17
 Although the district court found that "it appears from the evidence that [Sherman] never asked for covering," Sherman testified that when she was handcuffed in the trailer she asked one of the officers (Madden or Varga) if she could get a blouse because the straps of her nightgown were falling down. She testified that although she did not remember the officer's response, she was not allowed to get a blouse and was not given anything with which to cover herself. Sherman also testified that while she was detained on the hill she asked an officer to pull up her nightgown straps because her gown had fallen, exposing her breasts, and that he refused to assist her. Sherman was taken to the jail for booking wearing only her nightgown, and she stated that inside the van used to transport her to jail, she asked another officer to pull up her nightgown straps. That officer also refused. Sherman testified that her breasts were exposed for most of the time during the detention, causing her to feel humiliated and degraded.
 
 
 18
 This testimony would have permitted a reasonable jury to find that the officers with whom she had contact repeatedly ignored her requests for additional clothing or for assistance in pulling up her gown so that her breasts would not be exposed. A jury could have found that this exposure was unreasonably degrading or humiliating, or that is was an unreasonable invasion of her privacy. See Franklin, 31 F.2d at 876-78 (officers who did not provide covering for a man whose genitals were left exposed during a detention acted unreasonably).
 
 
 19
 The fact that Sherman did not identify the specific officers who refused her requests for covering or assistance does not necessarily release from § 1983 liability the officers who participated in her detention. See Rutherford v. City of Berkeley, 780 F.2d 1444, 1448 (9th Cir.1986) (although plaintiff could not identify particular officers who beat him, jury could have found that officers standing among group of officers that surrounded plaintiff his during beating were liable under § 1983); see also Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 560-61 (1st Cir.1989) (upholding the § 1983 liability of an officer who was an active participant in event causing plaintiff's injuries, even though he did not fire the injuring bullet). Although only Varga admitted to guarding Sherman directly, Benoit testified that he had directly participated in guarding the detainees on the hill. Bailey testified that he had participated in questioning and identifying the members of the detained group, and that he had questioned Sherman during the detention. This evidence would have allowed a jury to find that Bailey, Varga, and Benoit were aware of the manner in which Sherman was dressed because they had direct contact with Sherman during her detention, and therefore were liable under § 1983 as "integral participants" in an unreasonably degrading detention. See James by James v. Sadler, 909 F.2d 834 (5th Cir.1990) (finding that "backup officers" who remained armed on a premises during a search and guarded detained customers outside a shop while a search proceeded inside, but did not physically perform the search of the plaintiff, were not bystanders because they were "integral to the search"); Chuman v. Wright, 76 F.3d 292, 294 (9th Cir.1996) (recognizing James, 909 F.2d 834, with approval and adopting the "integral participant" standard from Fifth Circuit).
 
 
 20
 Evidence at trial also would have allowed a jury to conclude that the duration of the detention was unreasonable or that it was unreasonable to keep Sherman handcuffed throughout the six-hour period. The district court found that Sherman initially had been lawfully detained because her trailer was being searched. The court also found that after an outstanding warrant for her arrest was discovered during the investigation, she was lawfully detained pursuant to that warrant. It is unclear, however, how long Sherman was detained before the warrant was discovered, or the amount of time that passed between the discovery of the warrant and her transportation to the police station for booking.
 
 
 21
 Although Bailey testified that suspects were unhandcuffed after questioning if it appeared that they posed no risk of flight or disruptive behavior, Sherman testified that she remained handcuffed throughout the six hour detention. This restraint may have been unreasonable in light of the fact that there was no evidence that she posed a danger to the officers or was likely to flee. See Graham, 490 U.S. at 396. She testified that her handcuffing caused physical discomfort, and rendered her unable to pull up the straps of her nightgown. A reasonable jury could have concluded that, in light of Sherman's compliance with the directions of the officers, either the continuous handcuffing or the six-hour duration of the detention, or both, made the detention unreasonable under the Fourth Amendment. The contact that Bailey, Varga and Benoit had with Sherman during the detention would have allowed a jury to find that they were liable under § 1983 as "integral participants" in an unreasonable detention. Chuman, 76 F.3d at 294-95.
 
 
 22
 The district court found that all of the defendants were entitled to qualified immunity for Sherman's illegal search claims. The district court made no finding of qualified immunity regarding Sherman's unreasonable detention claim, however, because the court erroneously granted the defendants a directed verdict on the merits of that claim. The district court's order does not state that it considered the issue of qualified immunity for claims other than the search-related claims.
 
 
 23
 Even if we were to interpret the district court's order as finding qualified immunity as a matter of law with regard to the unreasonable detention claim, we would conclude that the district court erred in so ruling. The unreasonable detention claim is one in which the issue of qualified immunity merges into the merits of the claims. A directed verdict on a qualified immunity defense is not appropriate when there are significant factual disputes. Pierce, 76 F.3d at 1039. If a jury were to resolve these conflicts in Sherman's favor and conclude that the conditions of her detention were unreasonable, the officer's beliefs regarding the legality of their actions may have been unreasonable in light of clearly established legal principles. See Anderson v. Creighton, 483 U.S. 635, 639 (1987).
 
 
 24
 We therefore affirm the directed verdicts as to all of the non-supervisory defendants except Bailey, Varga, and Benoit. We reverse the directed verdict on Sherman's unreasonable detention claims as it applies to these defendants, and remand for further proceedings.
 
 
 25
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
 
 
 26
 The parties will bear their own costs.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3