Catharina F. COSTA, Plaintiff–Appellee,

v.

DESERT PALACE, INC., dba Caesars Palace Hotel & Casino, Defendant–Appellant.

No. 99–15645.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 13, 2000

Filed Dec. 29, 2000

Mark J. Ricciardi, Ricciardi Law Group, Las Vegas, Nevada, for the defendant-appellant.

Robert N. Peccole, Peccole & Peccole Ltd., Las Vegas, Nevada, for the plaintiff-appellee.

Before: KOZINSKI and KLEINFELD, Circuit Judges, and SCHWARZER,* Senior District Judge.

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

SCHWARZER, Senior District Judge:

The principal question before us is whether the district court erred in giving a mixed-motive rather than a pretext instruction to the jury considering plaintiff's claim of wrongful discharge and discriminatory working conditions. We conclude that in the absence of substantial evidence of conduct or statements by decisionmakers directly reflecting discriminatory animus, the giving of a mixed-motive instruction was reversible error.

## FACTUAL AND PROCEDURAL BACKGROUND

Catharina Costa was employed by Caesars Palace Hotel & Casino (Caesars) as a warehouse worker from 1987 to 1994. She was the only woman in the bargaining unit covered by a collective bargaining agreement (CBA) between Caesars and Teamsters Local 995. A long history of disciplinary infractions and suspensions culminated in her termination in 1994, after she engaged in a verbal and physical altercation with a fellow worker, Herbert Gerber. While Costa was fired, Gerber, a twenty-five year employee with a good disciplinary record and no prior suspensions, received only a five-day suspension. Both employees filed grievances under the CBA. An arbitrator sustained both disciplinary actions and found that Caesars had just cause to terminate Costa.

Costa filed this action alleging gender discrimination in connection with her termination and the conditions of her employment in violation of Title VII of the Civil Rights Act of 1964 (Title VII).[1] 42 U.S.C. §§ 2000e–2000e–17 (1994). The jury returned a verdict for Costa, awarding $64,377 for financial loss, $200,000 in compensatory damages, and $100,000 in punitive damages. The court denied Caesars' motion for judgment as a matter of law but granted its motion for new trial or remittitur, conditioned on Costa's acceptance of a reduction of compensatory damages to $100,000. The court also awarded attorney's fees of $56,298 and judgment was

entered accordingly. Caesars appeals. We have jurisdiction under 28 U.S.C. § 1291, and vacate the judgment, reverse it in part, and remand for further proceedings consistent with this opinion.

## DISCUSSION

### I. THE MIXED–MOTIVE JURY INSTRUCTION

The district court submitted both the termination and the discriminatory-conditions claims to the jury on the following instructions. It first instructed the jury that:

The plaintiff has the burden of proving each of the following by a preponderance of the evidence:

1. Costa suffered adverse work conditions, and

2. Costa's gender was a motivating factor in any such work conditions imposed upon her. Gender refers to the quality of being male or female.

If you find that each of these things has been proved against a defendant, your verdict should be for the plaintiff and against the defendant. On the other hand, if any of these things has not been proved against a defendant, your verdict should be for the defendant.

It then went on to give the following instruction, which is the central issue in this appeal:

You have heard evidence that the defendant's treatment of the plaintiff was motivated by the plaintiff's sex and also by other lawful reasons. If you find that the plaintiff's sex was a motivating factor in the defendant's treatment of the plaintiff, the plaintiff is entitled to your verdict, even if you find that the defendant's conduct was also motivated by a lawful reason.

However, if you find that the defendant's treatment of the plaintiff was motivated by both gender and lawful reasons, you must decide whether the

---

1. Her state law claims were dismissed before trial.

plaintiff is entitled to damages. The plaintiff is entitled to damages unless the defendant proves by a preponderance of the evidence that the defendant would have treated plaintiff similarly even if the plaintiff's gender had played no role in the employment decision.

Caesars' principal contention on appeal is that the district court erred by giving the jury a *Price Waterhouse* mixed-motive instruction rather than a *McDonnell Douglas* pretext instruction. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). It objected to the instruction at trial and offered a *McDonnell Douglas* pretext instruction, which the court rejected.

■ "Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading." *Chuman v. Wright,* 76 F.3d 292, 294 (9th Cir.1996). Generally, we review the formulation of instructions for abuse of discretion. *See Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery,* 150 F.3d 1042, 1046 (9th Cir.1998). However, "[i]f the instructions are challenged as a misstatement of the law, they are then reviewed *de novo.*" *Mockler v. Multnomah County,* 140 F.3d 808, 812 (9th Cir.1998) (citation and internal quotation marks omitted). Although the instruction did not misstate the law, Caesars argues that it was legal error to give it on the basis of the evidence presented at trial.

A Title VII employment discrimination claim may proceed on either a single-motive (or pretext) theory or a mixed-motive theory. In a pretext case, an employee must first make out a prima facie case of discrimination. If the employee succeeds, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employ-

ment action. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. If the employer makes that showing, the presumption raised by the prima facie case is rebutted and the burden of production then shifts to the employee to show that the employer's reason was pretext and the real reason was discriminatory. That burden merges with the ultimate burden of persuading the trier of fact that the employee has been the victim of intentional discrimination. *See Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ In contrast, the mixed-motive theory has two steps. First, the plaintiff must show the employer has "knowingly giv[en] substantial weight to an impermissible criterion," even if that criterion is only one of the factors considered. *Price Waterhouse,* 490 U.S. at 261–62, 109 S.Ct. 1775, 104 L.Ed.2d 268 (O'Connor, J., concurring). Second, once "a plaintiff in a Title VII case proves that her gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." *Id.* at 258, 109 S.Ct. 1775, 104 L.Ed.2d 268 (plurality opinion).

■ We have not heretofore addressed directly what amount of evidence a plaintiff must offer to prove her gender was a motivating factor in an adverse employment action.[2] However, the Second Circuit's reasoning in the leading case of *Ostrowski v. Atlantic Mut. Ins. Cos.,* 968 F.2d 171 (2d Cir.1992), is persuasive. *Ostrowski* explained:

[I]f the plaintiff presents evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude, and that evidence is sufficient to permit the

---

2. *Sischo–Nownejad v. Merced Cmty. Coll. Dist.,* 934 F.2d 1104 (9th Cir.1991), on which Costa relies, was a single-motive case decided under the *McDonnell Douglas* framework. *See id.* at 1110.

factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision, the jury should be instructed that if it does draw that inference the plaintiff is entitled to recover unless the employer has established by a preponderance of the evidence that the employer would have taken the same action without consideration of the impermissible factor.

968 F.2d at 182. In *Fields v. New York State Office of Mental Retardation,* 115 F.3d 116, 119 (2d Cir.1997), the court further explained that the *Price Waterhouse* analysis provides an affirmative defense to a defendant which becomes operative only after the plaintiff has proved motivation based on an impermissible reason.[3]

In defense of the court's instruction, Costa relies mainly on two incidents' as direct evidence of gender-based animus: (1) an allegedly discriminatory assignment of overtime hours, and (2) a supervisor's comment referring to Costa as a "bitch."

■ With respect to the overtime claim, Costa first testified that when she confronted her supervisor about why Mark Dudenake, a male coworker, received more overtime, "I was flat out told he's a man and has a family to support." On cross-examination, however, Costa retracted this testimony, admitting that her supervisor had not used the word "man." The supervisor's statement was gender neutral, and Costa has failed to show that it establishes either that Dudenake received extra overtime *because* he was male, or that Costa was denied overtime *because* she was female. Indeed, it is undisputed that Dudenake had a family to support while Costa did not. Comments motivated by consideration of parental or marital status do not establish gender bias, and neither status is protected under Title VII. *See Bruno v. City of Crown Point,* 950 F.2d 355, 362–63 (7th Cir.1991).

■ Costa also points to the testimony of Jeff Graham, a male coworker, that Assistant Warehouse Manager Karen Hallett (allegedly one of three decisionmakers in Costa's termination) told him that she "wanted to get rid of that bitch," in reference to Costa. The use of the word "bitch," she argues, is direct evidence that gender was a "motivating factor" in her termination. Graham further testified, however, that Hallett told him that she wanted to get rid of Costa because she "did not like the way that Catharina did her job" and because Costa was not a "team player." Other employees testified to personal animosity between Costa and Hallett, possibly exacerbated by Costa's role as union steward during a period of contentious labor relations. Testimony also showed that Hallett's aggressive management style offended other warehouse employees, both male and female. In this context, Hallett's use of the word "bitch" does not show discrimination because of Costa's gender. *See Barnett v. Department of Veterans Affairs,* 153 F.3d 338, 342–43 (6th Cir.1998) (use of word "bitch" by supervisor who made it known that he disliked plaintiff and used her as the butt of office jokes is consistent with personal dislike rather than discriminatory animus); *Kriss v. Sprint Communications Co.,* 58 F.3d 1276, 1281 (8th Cir. 1995) (use of the word "bitch" is not an indication of general misogynist attitude where term was directed toward only one woman rather than women in general and was, therefore, not particularly probative of gender discrimination).

■■ Costa otherwise relies upon an alleged pattern of disparate treatment favoring her male coworkers in the application of disciplinary standards and working conditions to prove the discriminatory nature of her termination. Whatever the efficacy of Costa's anecdotal evidence in es-

---

**3.** The *Fields* court held that the 1991 amendments to the Civil Rights Act changed pre–1991 law so that the affirmative defense no longer provides the employer insulation from all liability, but only limits the relief to which the plaintiff is entitled. While an employer may avoid monetary damages, a court may still award injunctive and declaratory relief, as well as attorneys' fees. *See* 42 U.S.C. § 2000e–5(g)(2)(B); *Fields,* 115 F.3d at 123–24.

tablishing a prima facie case under *McDonnell Douglas*, it does not suffice under *Price Waterhouse* to show that gender was a "substantial motivating reason for the adverse employment actions of which she complains." *Fields*, 115 F.3d at 120. Costa's case comes down to the fact that she was the only woman in her bargaining unit and was treated differently from her male colleagues, but the anecdotes she presents are not substantial evidence that she was treated differently· or terminated *because* she was a woman. Accordingly, the district court erred in giving the jury a mixed-motive instruction. Because the effect of the instruction was to shift the burden of proof to Caesars, the error was not harmless.[4] *See Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir.1992). Caesars was prejudiced, moreover, by the court's instruction that the jury had "heard evidence that the defendant's treatment of the plaintiff was motivated by the plaintiff's sex," a statement not supported by the record. Accordingly, the judgment must be vacated.

## II. CAESARS' MOTION FOR JUDGMENT AS A MATTER OF LAW ON THE TERMINATION CLAIM

 Caesars contends that the district court erred in denying its motion for judgment as a matter of law on Costa's termination claim.[5] We review the district court's decision *de novo*, and reverse only if the evidence, viewed in the light most favorable to the prevailing party, admits only of a contrary conclusion. *See Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000). If we conclude that the district court erroneously denied a motion for judgment as a matter of law, we may reverse and direct the court to enter a judgment as a matter of law. *See Neely v. Martin K. Eby Constr. Co.*, 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967).

 Costa asserts that she "pled and presented this case upon the 'mixed-motive' method of proving disparate treatment." The issue before us, therefore, is whether she presented substantial evidence of conduct or statements by persons involved in the decision to terminate her that directly reflects gender-based animus. *See Ostrowski*, 968 F.2d at 182. Costa recites a litany of anecdotes to support her position that she was subjected to disparate treatment in the application of discipline as compared to her male coworkers. She points to the fact that she was disciplined for absenteeism, tardiness, excessive breaks while working, improper use of her electric cart, and use of vulgarity and racial slurs while her male co-workers were not. For example, when Costa and her coworkers took an unauthorized break to have soup, she was the only one singled out for rebuke. Indeed, it seems undisputed that Costa was treated differently. However, these anecdotes are not sufficient to support a mixed-motive instruction. Nowhere does Costa point to direct

4. The case was submitted to the jury on a verdict form asking the jury, in substance: (1) whether "[p]laintiff's gender (sex) was a motivating factor in any adverse condition of employment," (2) whether "defendant's wrongful treatment of plaintiff was motivated both by gender and a lawful reason(s)," and (3) if so, whether "defendant has proved by a preponderance of the evidence that the defendant would have made the same decisions if the plaintiff's gender had played no role in the employment decision."

5. Caesars twice moved during trial for judgment as a matter of law on all of Costa's claims. The district court denied the motions. After trial, Caesars moved for judgment as a matter of law solely on Costa's termination and the award of punitive damages. The court again denied the motion. Because Caesars has limited both its Rule 50(b) motion and its assignment of error on appeal to the termination claim, we are not free to consider whether the motions should have been granted on both of Costa's claims. We note, however, that because Costa's entire case was presented solely as a mixed-motive case, our analysis with respect to the sufficiency of the evidence to support such a case, in section I of this opinion, would be dispositive of Costa's claim of discriminatory conditions of employment as well as her termination claim. We assume that the district court will be guided by that analysis on remand.

evidence that she was subjected to adverse treatment *because* she was a woman. With respect to the termination claim, therefore, the judgment must be reversed.

## III. CAESARS' OTHER CLAIMS

Caesars contends that the district court erred in excluding the arbitrator's decision upholding Costa's termination. Because Caesars is entitled to judgment as a matter of law on the termination claim, and the arbitrator's decision is relevant solely to that claim, we need not address the issue.

Caesars further contends that it is entitled to judgment as a matter of law on the punitive damages claim, citing *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). In light of our disposition of this appeal, we need not address this contention.

## CONCLUSION

Because the evidence did not support the giving of the mixed-motive instruction, the district court erred and the judgment is vacated. Because the evidence did not support the giving of a mixed-motive claim based on the termination, the judgment as to that claim is reversed. We remand for further proceedings consistent with this opinion.

VACATED in part; REVERSED in part; and REMANDED.