**Catharina F. COSTA, Plaintiff–Appellee,**

v.

**DESERT PALACE, INC., dba Caesars Palace Hotel & Casino, Defendant–Appellant.**

No. 99–15645.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 2000.

Filed Oct. 2, 2001.

Mark J. Ricciardi, Ricciardi Law Group, a partner in Fisher & Phillips, LLP, Las Vegas, Nevada, for the defendant-appellant.

Robert N. Peccole, Peccole & Peccole Ltd., Las Vegas, Nevada, for the plaintiff-appellee.

\* The Honorable William W Schwarzer, Senior United States District Judge for the Northern

Before: KOZINSKI and KLEINFELD, Circuit Judges, and SCHWARZER,\* Senior District Judge.

SCHWARZER, Senior District Judge:

## ORDER

The panel has voted unanimously to withdraw the Opinion filed December 29, 2000.

The petition for rehearing is DENIED.

## OPINION

The central question before us is whether the district court erred in giving a mixed-motive instruction to the jury considering plaintiff's claim of discriminatory working conditions and wrongful discharge. We conclude that in the absence of substantial evidence of conduct or statements by the employer directly reflecting discriminatory animus, the giving of a mixed-motive instruction was reversible error.

## FACTUAL AND PROCEDURAL BACKGROUND

Catharina Costa was employed by Caesars Palace Hotel & Casino (Caesars) as a warehouse worker from 1987 to 1994. She was the only woman in the bargaining unit covered by a collective bargaining agreement (CBA) between Caesars and Teamsters Local 995. A long history of disciplinary infractions and suspensions culminated in her termination in 1994, following a verbal and physical altercation

District of California, sitting by designation.

with a fellow worker, Herbert Gerber. While Costa was fired, Gerber, a twenty-five year employee with a good disciplinary record and no prior suspensions, received only a five-day suspension. Both employees filed grievances under the CBA. An arbitrator sustained both disciplinary actions and found that Caesars had just cause to terminate Costa.

Costa filed this action alleging gender discrimination in connection with the conditions of her employment and her termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 (1994) [hereinafter Title VII].[1] The jury returned a verdict for Costa, awarding $64,377 for financial loss, $200,000 in compensatory damages, and $100,000 in punitive damages. The court denied Caesars' motion for judgment as a matter of law but granted its motion for new trial or remittitur, conditioned on Costa's acceptance of a reduction of compensatory damages to $100,000. The court also awarded attorney's fees of $56,298 and judgment was entered accordingly. Caesars appeals. We have jurisdiction under 28 U.S.C. § 1291, and vacate the judgment on the conditions of employment claim, reverse on the termination claim, and remand for further proceedings consistent with this opinion.

## DISCUSSION

### I. THE MIXED–MOTIVE JURY INSTRUCTION

The district court submitted both the termination and the conditions of employment claims to the jury. It first instructed the jury that:

The plaintiff has the burden of proving each of the following by a preponderance of the evidence:

1. Costa suffered adverse work conditions, and

2. Costa's gender was a motivating factor in any such work conditions imposed upon her. Gender refers to the quality of being male or female. If you find that each of these things has been proved against a defendant, your verdict should be for the plaintiff and against the defendant. On the other hand, if any of these things has not been proved against a defendant, your verdict should be for the defendant.

It then went on to give the following instruction, which is the central issue in this appeal:

You have heard evidence that the defendant's treatment of the plaintiff was motivated by the plaintiff's sex and also by other lawful reasons. If you find that the plaintiff's sex was a motivating factor in the defendant's treatment of the plaintiff, the plaintiff is entitled to your verdict, even if you find that the defendant's conduct was also motivated by a lawful reason.

However, if you find that the defendant's treatment of the plaintiff was motivated by both gender and lawful reasons, you must decide whether the plaintiff is entitled to damages. The plaintiff is entitled to damages unless the defendant proves by a preponderance of the evidence that the defendant would have treated plaintiff similarly even if the plaintiff's gender had played no role in the employment decision.

Caesars' principal contention on appeal is that the district court erred by giving the jury a *Price Waterhouse* mixed-motive instruction rather than a *McDonnell Douglas* pretext instruction. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989);

---

**1.** Her state law claims were dismissed before trial.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). It objected to the instruction at trial and offered a *McDonnell Douglas* pretext instruction, which the court rejected.

■ "Jury instructions must be formulated so that they fairly and adequately cover the issues presented, correctly state the law, and are not misleading." *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996). Generally, we review the formulation of instructions for abuse of discretion. *See Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046 (9th Cir.1998). However, "[i]f the instructions are challenged as a misstatement of the law, they are then reviewed *de novo*." *Mockler v. Multnomah County*, 140 F.3d 808, 812 (9th Cir.1998) (citation and internal quotation marks omitted). Although the instruction did not misstate the law, Caesars argues that it was legal error to give it on the basis of the evidence presented at trial.

■ A Title VII employment discrimination claim may proceed on either a single-motive (or pretext) theory or a mixed-motive theory. In a pretext case, an employee must first make out a prima facie case of discrimination. If the employee succeeds, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the employer makes that showing, the presumption raised by the prima facie case is rebutted and the burden of production then shifts to the employee to show that the employer's reason was pretext and the real reason was discriminatory. That bur-

den merges with the ultimate burden of persuading the trier of fact that the employee has been the victim of intentional discrimination. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ In contrast, in a mixed-motive case, proof proceeds in two steps. First, the plaintiff must prove that "an impermissible motive played a motivating part in an adverse employment decision." *Price Waterhouse*, 490 U.S. at 250, 109 S.Ct. 1775 (plurality opinion). Second, once "a plaintiff in a Title VII case proves that her gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." *Id.* at 258, 109 S.Ct. 1775 (plurality opinion).

We have not heretofore addressed directly what evidentiary burden a plaintiff must satisfy to prove her gender was a motivating factor in an adverse employment action.[2] Our sister circuits have dealt with this issue and, though not in identical language, have all reached the conclusion that evidence that merely raises an inference of discrimination from differential treatment is not sufficient to shift the burden to the defendant. *See Jackson v. Harvard Univ.*, 900 F.2d 464, 467 (1st Cir.1990) ("If a plaintiff can provide direct evidence that gender bias infected the decision making process, the *Burdine* framework becomes irrelevant and the burden shifts to defendant.... Direct evidence is evidence which, in and of itself, shows a discriminatory animus."); *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir.1992) ("[T]hough sufficient proof that

2. *Sischo–Nownejad v. Merced Community College District*, 934 F.2d 1104 (9th Cir.1991), on which Costa relies, was a single-motive case decided under the *McDonnell Douglas* framework. *See id.* at 1110.

the forbidden factor played a 'motivating role' to entitle the plaintiff to a burden shifting instruction may be furnished through circumstantial evidence, that circumstantial evidence must be tied directly to the alleged discriminatory animus.... If the plaintiff's nonstatistical evidence is directly tied to the forbidden animus, for example, policy documents or statements of a person involved in the decision making process that reflect a discriminatory or retaliatory animus of the type complained of in the suit, that plaintiff is entitled to a burden-shifting instruction."); *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1096 (3d Cir.1995) ("In a 'mixed motives' or *Price Waterhouse* case, the employee must produce direct evidence of discrimination, i.e., more direct evidence than is required for the *McDonnell Douglas/Burdine* prima facie case."); *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir.1995) ("To earn a mixed motive instruction ... requires 'direct evidence that decision makers placed substantial negative reliance on an illegitimate criterion,' " quoting *Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. 1775, O'Connor, J., concurring); *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir.1993) ("When a plaintiff presents credible direct evidence that discriminatory animus in part motivated or was a substantial factor in the contested employment action, the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor. Direct evidence is evidence which, if believed, proves the fact without inference or presumption."); *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 514 (6th Cir. 1991) ("Under *Price Waterhouse,* such a burden on the defendant only arises where the plaintiff presents direct evidence that unlawful discriminatory animus was a substantial motivation for the adverse action."); *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir.1997) ("Two methods exist for Plair to satisfy his burden of proof: by direct evidence that racial discrimination motivated Brash's decision to terminate him, or by the indirect, burden-shifting method of *McDonnell Douglas Corp. v. Green.* ... '[D]irect evidence' is defined as evidence which 'if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption.' "); *Schleiniger v. Des Moines Water Works*, 925 F.2d 1100, 1101 (8th Cir.1991) ("A mixed motive case exists either when (1) the employer 'concedes that age was a discernible factor, but not a motivating one, for the employment decision' or (2) the 'trial court finds that a discriminatory reason was a discernible factor in the employer's decision-making process.' ... Simply because a discriminatory reason might be inferred from a prima facie case does not mean that a mixed motive case exists."); *Heim v. Utah*, 8 F.3d 1541, 1547 (10th Cir.1993) ("At best, it is only arguable that a discriminatory intent to keep Ms. Heim in the office be inferred from the statement. This type of inferential statement is not 'direct evidence' of discrimination satisfying the plaintiff's burden."); *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 923 (11th Cir.1990) ("In a direct evidence case, the plaintiff must produce direct testimony that the employer acted with discriminatory motive, and must convince the trier of fact to accept the testimony.... If the plaintiff produces such evidence and the trier of fact believes it, the defendant must prove by a preponderance of the evidence that the defendant would have reached the same decision without the factor proved."); *Thomas v. Nat'l Football League Players Ass'n*, 131 F.3d 198, 204 (D.C.Cir.1997) ("Burden-shifting under *Price Waterhouse* requires 'evidence of conduct or state-

ments that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.' ").[3]

Costa contends that "the evidence [she] presented showed that Costa was definitely being treated differently than her male co-workers and a reasonable mind could conclude that it was because she was a woman." But of the incidents she relates, only two bear even a remote connection to gender: (1) an allegedly discriminatory assignment of overtime hours, and (2) a supervisor's comment referring to Costa as a "bitch."

 With respect to' the overtime claim, Costa first testified that when she confronted her supervisor about why Mark Dudenake, a male coworker, received more overtime, "I was flat out told he's a man and has a family to support." On cross-examination, however, Costa retracted this testimony, admitting that her supervisor had not used the word "man." The supervisor's statement was gender neutral, and Costa has failed to show that it establishes either that Dudenake received extra overtime *because* he was male, or that Costa was denied overtime *because* she was female. Indeed, it is undisputed that Dudenake had a family to support while Costa did not. Comments motivated by consideration of parental or marital status do not establish gender bias, and neither status is protected under Title VII. *See Bruno v. City of Crown Point,* 950 F.2d 355, 362–63 (7th Cir.1991).

 Costa also points to testimony of Jeff Graham, a male coworker, that Assistant Warehouse Manager Karen Hallett (allegedly one of three decisionmakers in Costa's termination) told him that she "wanted to get rid of that bitch," in reference to Costa. The use of the word "bitch," she argues, directly reflects that gender was a "motivating factor" in her termination. Graham further testified, however, that Hallett told him that she wanted to get rid of Costa because she "did not like the way that Catharina did her job" and because Costa was not a "team player." Other employees testified to personal animosity between Costa and Hallett, possibly exacerbated by Costa's role as union steward during a period of contentious labor relations. Testimony also showed that Hallett's aggressive management style offended other warehouse employees, both male and female. In this context, Hallett's use of the word "bitch" does not show discrimination because of Costa's gender. *See Barnett v. Dep't of Veterans Affairs,* 153 F.3d 338, 342–43 (6th Cir.1998) (use of word "bitch" by supervisor who made it known that he disliked plaintiff and used her as the butt of office jokes is consistent with personal dislike rather than discriminatory animus); *Kriss v. Sprint Communications Co.,* 58 F.3d 1276, 1281 (8th Cir.1995) (use of the word "bitch" is not an indication of general misogynist attitude where term was directed toward only one woman rather than women in general and was, therefore, not particularly probative of gender discrimination).

 Costa's other evidence consists of various grievances about her treatment by

---

**3.** The use of terms such as "direct" evidence should not be read as limiting the *type* of evidence a plaintiff such as Costa must present in order to receive a mixed-motive instruction. Rather, it is directed at the greater *quantum* of evidence required to establish a mixed-motive case. The reason for the distinction is that in a mixed-motive case the burden of proof shifts to the defendant once the plaintiff has produced sufficient evidence, while in a pretext case the burden always remains with the plaintiff. *See Price Waterhouse,* 490 U.S. at 258, 109 S.Ct. 1775.

Caesars, including a number of incidents in which she claims that she was treated differently from her male coworkers. Thus, she claims to have received warnings for tardiness and absenteeism not given to men, to have been asked by a supervisor while on an unscheduled break whether she had work to do when men were not, to have been forced to sign a United Way card when men were not, to have been written up for unsafe operation of a forklift when men were not, to have been suspended for using vulgar language when men were not, to have been excluded from an office where men were taking a break, to have been followed by her supervisor when men were not, and, finally, to have been terminated for an altercation with a coworker who was not terminated.

 Even if Costa's evidence of differential treatment were found to raise an inference of discrimination, it does not "prove that her gender played a motivating part in an employment decision." *Price Waterhouse*, 490 U.S. at 258, 109 S.Ct. 1775 (plurality opinion); *see also id.*

at 280, 109 S.Ct. 1775 (O'Connor, J., concurring) ("I read [today's decision] as establishing that in a limited number of cases Title VII plaintiffs, by presenting direct and substantial evidence of discriminatory animus, may shift the burden of persuasion to the defendant to show that an adverse employment decision would have been supported by legitimate reasons.").[4] Costa's case comes down to the fact that she was the only woman in her *workplace and that in some instances she was treated less favorably than her male coworkers.* But she has failed to produce evidence that she was treated differently *because* she was a woman-"direct and substantial evidence of discriminatory animus." Accordingly, the district court erred in giving the jury a mixed-motive instruction.[5] Because the court's instructions shifted the burden of proof to Caesars, the error was not harmless.[6] *See Caballero v. City of Concord,* 956 F.2d 204, 206 (9th Cir.1992). Caesars was prejudiced, moreover, by the court's instruction

---

**4.** In *Price Waterhouse,* the trial judge had found that some of the firm's partners' remarks about plaintiff "stemmed from an impermissibly cabined view of the proper behavior of women, and that Price Waterhouse had done nothing to disavow reliance on such comments." 490 U.S. at 236–37, 109 S.Ct. 1775. Notably, one male partner advised her that in order to improve her chances of making partner she should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." *Id.* at 235, 109 S.Ct. 1775.

**5.** The 1991 amendment to the Civil Rights Act do not alter the substantive analysis under *Price Waterhouse,* but provides a nonmonetary remedy against discriminatory practices even where the employer establishes the affirmative defense. *See* 42 U.S.C. § 2000e–5(g)(2)(B). As the Second Circuit has held, the amendment "modifies *Price Waterhouse* by altering the legal consequences of a successful showing by the defendant on its affirmative defense." *Fields v. N.Y. State Office of*

*Mental Retardation and Developmental Disabilities,* 115 F.3d 116, 124 (2d Cir.1997); *see also Watson v. Southeastern Pa. Transp. Auth.,* 207 F.3d 207, 216 (3d Cir.2000); *Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1183 (2d Cir.1992) ("[T]he Civil Rights Act of 1991 does not address our biggest problem: whether *Price Waterhouse* requires the plaintiff to show 'direct evidence' of discrimination as a precondition to shifting into mixed-motive analysis.").

**6.** The case was submitted to the jury on a verdict form asking the jury, in substance: (1) whether "[p]laintiff's gender (sex) was a motivating factor in any adverse condition of employment," (2) whether "defendant's wrongful treatment of plaintiff was motivated both by gender and a lawful reason(s)," and (3) if so, whether "defendant has proved by a preponderance of the evidence that the defendant would have made the same decisions if the plaintiff's gender had played no role in the employment decision."

that the jury had "heard evidence that the defendant's treatment of the plaintiff was motivated by the plaintiff's sex," a statement not supported by the record. Accordingly, the judgment must be vacated.

## II. CAESARS' MOTION FOR JUDGMENT AS A MATTER OF LAW ON THE TERMINATION CLAIM

Caesars contends that the district court erred in denying its motion for judgment as a matter of law on Costa's termination claim.[7] We review the district court's decision *de novo,* and reverse only if the evidence, viewed in the light most favorable to the prevailing party, admits only of a contrary conclusion. *See Passantino v. Johnson & Johnson Consumer Prod., Inc.,* 212 F.3d 493, 506 (9th Cir. 2000). If we conclude that the district court erroneously denied a motion for judgment as a matter of law, we may reverse and direct the court to enter a judgment as a matter of law. *See Neely v. Martin K. Eby Constr. Co.,* 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967).

Costa asserts that she "pled and presented this case upon the 'mixed-motive' method of proving disparate treatment." At no point during the litigation did she seek to raise a pretext claim. The issue before us, therefore, is whether she presented substantial evidence of conduct or statements by persons involved in the decision to terminate her that directly reflects gender-based animus. Costa contends that her termination was the culmination of the disparate treatment she received and that men were treated differently from her in the application of discipline, up to and including termination. She points to the fact that although the altercation with Gerber precipitated her termination, he received only a five-day suspension. Even if these circumstances were found to raise an inference of discrimination, Costa points to no evidence that gender played a part in the decision-that she was terminated because she was a woman. *See* discussion at pp. 887–90, *supra.* With respect to the termination claim, therefore, the judgment must be reversed.[8]

## III. CAESARS' OTHER CONTENTIONS

Caesars contends that the district court erred in excluding the arbitrator's decision upholding Costa's termination. Because Caesars is entitled to judgment as a matter of law on the termination claim, and the arbitrator's decision is relevant solely to that claim, we need not address the issue.

Caesars further contends that it is entitled to judgment as a matter of law on the punitive damages claim, citing *Kolstad v. American Dental Association,* 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494

---

7. Caesars twice moved during trial for judgment as a matter of law on all of Costa's claims. The district court denied the motions. After trial, Caesars moved for judgment as a matter of law solely on Costa's termination claim and the award of punitive damages. The court again denied the motion. Because Caesars has limited both its Rule 50(b) motion and its assignment of error on appeal to the termination claim, we are not free to consider whether the motions should have been granted on both of Costa's claims. We note, however, that because Costa's entire case was presented solely as a mixed-motive case, our analysis with respect to the sufficiency of the evidence to support such a case, in section I of this opinion, would be dispositive of Costa's claim of discriminatory conditions of employment as well as her termination claim. We assume that the district court will be guided by that analysis on remand.

8. Costa's petition for rehearing did not specifically challenge the panel's decision reversing the judgment on the termination claim.

(1999). The district court's damage instruction (# 13) and its vicarious liability instruction (# 15) did not take into account the decision in *Kolstad,* handed down after the judgment became final. On remand, the court should apply *Kolstad* to the extent it may be appropriate. *See Passantino,* 212 F.3d at 514.

## CONCLUSION

Because the evidence did not support the giving of the mixed-motive instruction on Costa's claim of gender discrimination, the district court erred and the judgment is vacated. Because the evidence did not support the giving of a mixed-motive instruction on the wrongful termination claim, the motion for judgment as a matter of law on that claim should have been granted and the judgment as to that claim is reversed. We remand for further proceedings consistent with this opinion.

VACATED in part; REVERSED in part; and REMANDED.