FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

GERALDINE NICHOLSON; JOSE
FERNANDO HUERTA; J. H., a minor
by and through his guardian ad litem,
Jose Fernando Huerta; J. N. G., a
minor by and through his guardian
ad litem, Geraldine Nicholson,
          *Plaintiffs-Appellees*,

v.

CITY OF LOS ANGELES; EVERARDO
AMARAL, individually and in his
official capacity as a Police Officer
of the Los Angeles Police
Department,
          *Defendants*,

and

MIGUEL GUTIERREZ, individually
and in his official capacity as a
Police Officer of the Los Angeles
Police Department,
          *Defendant-Appellant.*

No. 17-56648

D.C. No.
2:15-cv-07594-
DDP-RAO

OPINION

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted March 4, 2019
Pasadena, California

Filed August 21, 2019

Before:  Andrew J. Kleinfeld, R. Guy Cole, Jr.,[*]
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Nguyen

## SUMMARY[**]

### Civil Rights

The panel reversed in part and affirmed in part the district court's denial of qualified immunity to a Los Angeles Police Department officer in an action brought pursuant to 42 U.S.C. § 1983 for violations of plaintiffs' Fourth Amendment rights to be free from excessive force and unreasonable seizure and violations of their Fourteenth Amendment substantive due process rights.

Plaintiffs were among a group of teenagers who had met in an alleyway near their school to listen to and sing rap music. One of the teenagers, plaintiff J.N.G., was shot by defendant Gutierrez after Gutierrez mistook a plastic Airsoft replica gun held by one of the other teenagers for an actual

---

[*] The Honorable R. Guy Cole, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

gun. After the shooting, officers detained the group for over five hours while they investigated. J.N.G. and J.H. filed a lawsuit and the district court denied qualified immunity on plaintiffs' Fourth and Fourteenth Amendment claims.

Addressing the Fourth Amendment claim, the panel agreed with the district court that under the circumstances, plaintiffs' continued detention for five hours after the shooting—well after any probable cause would have dissipated—and the use of handcuffs throughout the duration of the detention violated plaintiffs' clearly established Fourth Amendment rights to be free from unlawful arrest and excessive force. The panel rejected Gutierrez's argument that while he participated in the initial handcuffing and detention, he was not responsible for any subsequent constitutional violation because he played no role in that conduct. The panel held that an officer can be held liable where he is just one participant in a sequence of events that gives rise to a constitutional violation. Here, viewing the evidence in the light most favorable to plaintiffs, Gutierrez was more than a "mere bystander" in the alleged constitutional violations. The panel affirmed the district court's denial of qualified immunity on the Fourth Amendment violations because, ultimately, a reasonable jury could conclude that Gutierrez played an integral role in the unlawfully prolonged detention and sustained handcuffing of plaintiffs.

Addressing the Fourteenth Amendment substantive due process claim, the panel held that, viewing the totality of the evidence in the light most favorable to the plaintiffs, the shooting violated plaintiffs' due process rights. Under the circumstances, a rational finder of fact could find that Gutierrez's use of deadly force shocked the conscience and was unconstitutional under the Fourteenth Amendment.

Nevertheless, the panel held that because no analogous case existed at the time of the shooting, the district court erred by denying Gutierrez qualified immunity for this claim. The panel accordingly reversed the district court and remanded for an entry of qualified immunity on the Fourteenth Amendment claim.

## COUNSEL

Denise L. Rocawich (argued) and James R. Touchstone, Jones & Mayer, Fullerton, California, for Defendant-Appellant.

Herbert-John S. Hayden (argued) and John W. Harris, Harris & Associates, Los Angeles, California, for Plaintiffs-Appellees.

## OPINION

NGUYEN, Circuit Judge:

On the morning of February 10, 2015, four teenagers met in an alleyway near their school to listen to and sing rap music. As the teenagers—Michael Sanders, Abdul Wooten, J.N.G., and J.H.[1]—stood in a tight circle dancing and rapping, Sanders was holding a plastic Airsoft replica gun with a bright orange tip as a prop. Just as they turned off the music and were getting ready to head to school, J.N.G. was

---

[1] Throughout the record, J.N.G. (Jamar Nicholson Green) and J.H. (Jason Huerta) were referred to by their initials because they were minors at the time of the incident and for some time after filing this lawsuit. For consistency, we also refer to them by their initials.

shot by Officer Michael Gutierrez of the Los Angeles Police Department ("LAPD").  Officer Gutierrez fired his weapon because he mistook Sanders's replica gun for an actual gun. Gutierrez fired multiple shots, one of which hit J.N.G. in the back.  After the shooting, officers detained the group for over five hours while they investigated.

J.N.G. and J.H. (collectively, "Plaintiffs") filed a lawsuit against the officers, the LAPD, and the City of Los Angeles, alleging violations of the Fourth and Fourteenth Amendments and various state laws.  The district court denied qualified immunity on two of Plaintiffs' constitutional claims.  Gutierrez appeals.  We affirm in part and reverse in part.

## BACKGROUND[2]

At around 7:15 a.m. on February 10, 2015, J.N.G., J.H., Michael Sanders, and Abdul Wooten met in an alley at the corner of 10th Avenue and Florence Avenue in Los Angeles, CA, a few blocks from their high school.  They regularly gathered in that alleyway before and after school to listen to music and freestyle rap.  That morning, as they were rapping and dancing in a circle, Sanders was holding a plastic toy gun with a bright orange tip.  J.N.G., J.H., and Wooten maintain that Sanders kept the gun pointed downward around waist-level and did not fire the gun that morning.  At approximately 7:40 a.m., the teenagers turned off the music and began preparing to head to school.

---

[2] At this stage of the proceedings, we view the facts in the light most favorable to Plaintiffs.  *George v. Morris*, 736 F.3d 829, 836 (9th Cir. 2013) (9th Cir. 2013).

Around this time, Officer Everardo Amaral was driving down 10th Avenue in an unmarked car with his partner, Officer Gutierrez. From the passenger seat, Gutierrez "saw a person (later identified as Michael Sanders) pointing . . . a blue steel handgun at another person (later identified as Plaintiff J.H.)." Gutierrez, believing that J.H. was "being robbed at gun point or was about to be murdered," yelled "Gun, gun, gun!" Amaral stopped the vehicle south of the alley on 10th Avenue. Without conferring with Amaral, Gutierrez immediately jumped out of the car and ran into the alley. Amaral parked the car and followed Gutierrez. Neither officer was in uniform.

Gutierrez claims he identified himself as an LAPD officer and commanded Sanders to drop the gun. However, J.H., J.N.G., and Wooten all contend that Gutierrez did not identify himself or make any verbal commands prior to shooting his weapon. A few seconds after he entered the alley, Officer Gutierrez fired at least three shots, one of which hit J.N.G. in the back. J.N.G. and J.H. contend that Gutierrez fired his gun with one hand while running toward them, while Gutierrez stated that he fired only after stopping a few feet away from the group. When the shots were fired, J.H. was about to put on his school uniform, and J.N.G. was spraying cologne on his face. The four of them had been standing in a tight circle, "within a foot or so of each other." Sanders soon turned and dropped the toy gun, though the parties dispute whether this occurred before or after Gutierrez fired.

Shortly after Officer Gutierrez fired, Officer Amaral arrived and requested three additional units. Amaral also requested an ambulance when he realized that J.N.G. had been shot. The officers held the group at gunpoint, face down on the ground. The parties dispute how far the

dropped "gun" was from the teenagers when they were on the ground, but neither officer picked it up or moved it away from them. While on the ground, J.H. shouted that the gun was "not even a real gun" and repeatedly asked why the officers shot at them and "What did we do wrong?" The officers remained silent in response to his questions, with dumbfounded expressions on their faces. Responding officers soon arrived, and they searched and handcuffed the group. Gutierrez was "involved in the decision to handcuff them." Officer Amaral later explained in his deposition that the detention of the boys was "[f]or [a] weapons violation." Officers Gutierrez and Amaral were separated and monitored soon after additional units arrived on the scene. J.H. remained in handcuffs throughout the investigation, which lasted until around 1:00 p.m., over five hours after the shooting. J.N.G. also remained in handcuffs for over five hours—through the duration of his hospital examination—until detectives interrogated him.

J.N.G., by and through his mother and guardian ad litem Geraldine Nicholson, and J.H., by and through his father and guardian ad litem Jose Fernando Huerta, sued Officer Gutierrez, Officer Amaral, the City of Los Angeles, the LAPD, Chief of Police Charles Beck, and Commander Andrew Smith. In addition to various state law claims, Plaintiffs J.N.G. and J.H. alleged claims under 42 U.S.C. § 1983 for violations of their Fourth Amendment rights to be free from excessive force and unreasonable seizure and violations of their Fourteenth Amendment substantive due process rights. Defendants Gutierrez, Amaral, and the City of Los Angeles jointly moved for summary judgment, arguing in part that no constitutional violation occurred and that qualified immunity applied.

The district court granted in part and denied in part Defendants' joint motion for summary judgment. Relevant to this appeal, the district court denied Gutierrez qualified immunity in part on Plaintiffs' Fourth Amendment claim and on Plaintiffs' Fourteenth Amendment claim. Gutierrez timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291 to review the denial of qualified immunity at the summary judgment stage. *Plumhoff v. Rickard*, 572 U.S. 765, 771–73 (2014). But "the scope of our review over the appeal is circumscribed" because we may not "consider questions of eviden[tiary] sufficiency, i.e., which facts a party may, or may not, be able to prove at trial." *Morris*, 736 F.3d at 834 (quoting *CarePartners, LLC v. Lashway*, 545 F.3d 867, 875 (9th Cir. 2008)). "Thus, in this appeal, we are confined to the question of 'whether the defendant[s] would be entitled to qualified immunity as a matter of law, assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor.'" *Id.* at 836 (quoting *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012)).

## DISCUSSION

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam). Once a defendant has raised qualified immunity as a defense to a claim, a plaintiff must show "(1) that the right was violated; and (2) that the right was clearly established at the time of the alleged misconduct." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017). Although a right is not clearly established

where merely defined "at a high level of generality," qualified immunity does not "require a case directly on point." *Kisela*, 138 S. Ct. at 1152. Instead, the "focus is on whether the officer had fair notice that her conduct was unlawful," *id.*, for example, through "any cases of controlling authority in their jurisdiction at the time of the incident," *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

We now turn to each of Plaintiffs' constitutional claims.

## I. Fourth Amendment Claim

Plaintiffs allege that, after the shooting, Defendants violated their Fourth Amendment rights by unlawfully arresting them, using excessive force, and prolonging their detention.[3]  In denying Officer Gutierrez qualified immunity, the district court concluded that immediately after the shooting, an investigatory stop was reasonable while the officers assessed the situation. But "[a]t some point, the detention evolved into a full-fledged arrest that required probable cause that J.H. and J.N.G. had been engaged in criminal activity." The district court further concluded that "a reasonable jury could determine that the sustained handcuffing of J.H. and J.N.G. . . . constituted excessive force."

---

[3] Plaintiffs also alleged that the shooting itself also violated their Fourth Amendment rights. The district court granted summary judgment in favor of Defendants on this claim, finding that the teenagers were not "seized" by Gutierrez's gunfire under the Fourth Amendment because Gutierrez intended to use deadly force against Sanders, not against J.N.G. or J.H. *See United States v. Al Nasser*, 555 F.3d 722, 728 (9th Cir. 2009). Plaintiffs do not challenge this ruling and thus the question of whether the shooting violated their Fourth Amendment rights is not before us in this appeal.

It is well-established that a "person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated." *United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005) (per curiam). "As a corollary . . . of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause." *Id.* (quoting *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988)). A reasonable officer would know that participation in an ongoing seizure after any probable cause had dissipated violates the Fourth Amendment.

Here, it was soon apparent to the officers that the teenagers were unarmed, posed no threat to anyone, and were not engaged in any criminal activity. The incident occurred in the morning right before the start of school hours, and Plaintiffs had their school uniforms and backpacks. In fact, as Officer Gutierrez approached the scene, J.N.G. was spraying on cologne and J.H. was donning his school uniform. Moreover, Officer Gutierrez admitted that he perceived at least J.H. to be a possible victim, not a suspect, further undermining any justification to detain him. We agree with the district court that under these circumstances, Plaintiffs' continued detention for five hours—well after any probable cause would have dissipated—and the use of handcuffs throughout the duration of the detention violated Plaintiffs' clearly established Fourth Amendment rights to be free from unlawful arrest and excessive force.

On appeal, Officer Gutierrez does not appear to dispute that the prolonged detention and handcuffing violated Plaintiffs' clearly established Fourth Amendment rights. Instead, Gutierrez focuses his argument on the fact that he

was separated and monitored after the shooting. Thus, his argument goes, while he admittedly "was an integral participant in the initial handcuffing and detention," he is not responsible for any subsequent constitutional violation because he played no role in that conduct.

A police officer need not have been the sole party responsible for a constitutional violation before liability may attach. "An officer's liability under section 1983 is predicated on his 'integral participation' in the alleged violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (quoting *Chuman v. Wright*, 76 F.3d 292, 294–95 (9th Cir. 1996)). This theory of liability "does not require that each officer's actions themselves rise to the level of a constitutional violation." *Id.* (quoting *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004)). Instead, liability may attach if the officer has "some fundamental involvement in the conduct that allegedly caused the violation." *Id.* A theory of integral participation thus comports with general tort principles of causation applicable to a § 1983 action: "[G]overnment officials, like other defendants, are generally responsible for the 'natural' or 'reasonably foreseeable' consequences of their actions." *Stoot v. City of Everett*, 582 F.3d 910, 926 (9th Cir. 2009). Even though "an intervening decision of an informed, neutral decision-maker 'breaks' the chain of causation," the chain of causation is not broken where the intervening decision was foreseeably influenced by the defendant. *Id.* (quoting *Murray v. Earle*, 405 F.3d 278, 292 (5th Cir. 2005)). Thus, under our case law, an officer could be held liable where he is just one participant in a sequence of events that gives rise to a constitutional violation.

For example, in *Boyd v. Benton County*, we held that each of the officers in a search operation were liable for

excessive force for the use of a flash-bang grenade, even though only one officer reached into the home and deployed the device. 374 F.3d at 780. We reasoned that the use of the device was "part of the search operation in which every officer participated in some meaningful way." *Id.* Moreover, each officer "was aware of the decision . . . , did not object to it, and participated in the search operation knowing the flash-bang was to be deployed." *Id.* By contrast, in *Torres v. City of Los Angeles*, we found that a detective was not an integral participant in an allegedly unlawful arrest, in part because she "was not present [at the arrest], and there is no evidence that [she] instructed the other detectives to arrest [the plaintiff] or that any of those detectives consulted with her before making the arrest." 548 F.3d 1197, 1206 (9th Cir. 2008).

Here, viewing the evidence in the light most favorable to Plaintiffs, Gutierrez was more than a "mere bystander" in the alleged constitutional violations. *See Chuman*, 76 F.3d at 294. Plaintiffs alleged that Officers Amaral and Gutierrez "directed the other officers to handcuff, search and arrest all of us for reasons unknown to any of us." Gutierrez himself acknowledged that he was "involved in the decision to handcuff [Plaintiffs]." In contrast to the absent officer who was not consulted prior to the arrest in *Torres*, Gutierrez was the initial officer who set these events into motion, *and* either instructed the other officers to arrest Plaintiffs or consulted with them in that decision. *See* 548 F.3d at 1206. The district court did not decide exactly when during the prolonged detention probable cause dissipated and, similarly, how proximate Gutierrez's conduct was to that violation. But these issues present questions for the jury because their resolution depends on disputed material facts. Ultimately, because a reasonable jury could conclude that Gutierrez played an integral role in the unlawfully prolonged

detention and sustained handcuffing of Plaintiffs, we affirm the district court's denial of qualified immunity on the Fourth Amendment violation.

## II. Fourteenth Amendment Claim

Plaintiffs contend that the unlawful shooting violated their substantive due process rights under the Fourteenth Amendment.  The district court denied Gutierrez qualified immunity because a jury could reasonably conclude that his conduct amounted to deliberate indifference.  The district court also found that the substantive due process right at issue was clearly established.  We first address whether Gutierrez's conduct violated Plaintiffs' substantive due process rights under the Fourteenth Amendment, and then whether the right was clearly established at the time of the incident.

### A.

To prevail on a substantive due process claim under the Fourteenth Amendment, Plaintiffs must show that an officer's conduct "shocks the conscience." *See Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).  The "critical consideration [is] whether the circumstances are such that actual deliberation is practical." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998)).  If so, "an officer's 'deliberate indifference' may suffice to shock the conscience," *Wilkinson*, 610 F.3d at 554, and the plaintiff may prevail by showing that the officer "disregarded a known or obvious consequence of his action," *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011).  The "deliberate-indifference inquiry should go to the jury if any rational factfinder could find this requisite mental state." *Id.*  Here, having found a triable issue on whether

"deliberation was practical under the circumstances," the district court held that "[a] finder of fact could conclude . . . that Gutierrez disregarded the known or obvious risks of injury to J.H. and J.N.G. when he fired at Sanders without taking time to assess the situation."

We agree with the district court and hold that, viewing the totality of the evidence in the light most favorable to the Plaintiffs, the shooting violated Plaintiffs' due process rights. We do not discount the seriousness of the situation that Officer Gutierrez thought he observed: a person holding what appeared to be a gun standing near others who may have been in danger. But Sanders "was not engaged in any threatening or menacing behavior, and he kept the airsoft gun securely pointed toward the ground." The alleyway was near a school, and Plaintiffs were "equipped with school uniforms and backpacks . . . [appearing] to be minors on their way to school and not gang members." Yet within seconds of observing the "gun," without consulting with his partner, Gutierrez rushed down the alleyway. As he ran, he fired his gun toward both Sanders, the perceived perpetrator of a possible crime, and innocent bystanders, with one bullet ultimately striking J.N.G. in the back. Under these circumstances, a rational finder of fact could find that Gutierrez's use of deadly force shocks the conscience and was unconstitutional under the Fourteenth Amendment.

Gutierrez's arguments to the contrary are unpersuasive. As a preliminary matter, Gutierrez challenges the district court's finding that a reasonable jury could find that deliberation was practical under the circumstances. But because this is an interlocutory appeal, we are not free to revisit the district court's conclusions as to "which facts a party may, or may not, be able to prove at trial." *See Morris*, 736 F.3d at 834. Our review is limited to whether "the denial

of qualified immunity was appropriate by assuming that the version of the material facts asserted by the non-moving party is correct." *Bingue v. Prunchak*, 512 F.3d 1169, 1172–73 (9th Cir. 2008). Assuming the facts in Plaintiffs' favor, no attendant circumstances weighed in favor of the immediate use of deadly force, other than Gutierrez's belief that Sanders was holding a gun. As the district court noted, under these circumstances, Gutierrez's immediate use of force without communicating with his partner, his failure to seek cover, and his failure to formulate a plan before acting were all contrary to LAPD's training and policy. We agree with the district court that the evidence is sufficient to create a genuine dispute of fact on whether deliberation was practical under the circumstances, and, in any event, we would be without power to reverse on this ground.

Gutierrez next argues that, as a matter of law, the district court erred in failing to apply the "intent to harm" standard, under which Plaintiffs must show that he acted "with a purpose to harm unrelated to legitimate law enforcement objectives." *Wilkinson*, 610 F.3d at 554. By that standard, Gutierrez argues, he is entitled to qualified immunity even if he acted with deliberate indifference, because he did not intend to shoot J.N.G.

We have previously carved out a narrow situation—high-speed police car chases—in which we have found, categorically, that an officer does not have time to deliberate. *Bingue*, 512 F.3d at 1177. In *Bingue v. Prunchak*, we considered whether high-speed pursuits should categorically give rise to the application of the "intent to harm" standard, or whether the "deliberate indifference" standard may apply depending on the circumstances. In holding that "the intent to harm" standard "applies to all high-speed police chases," *id.*, we reasoned that such a rule best accounts for an officer's

"repeated split-second decisions about how best to apprehend the fleeing suspect in a manner that will minimize risk to [the officer's] own safety and the safety of the general public." *Id.* at 1176.  A suspect fleeing in a car at high speed gives an officer "no time for reflection and precious little time for deliberation concerning either the decision to join the chase in the first place or the serial decisions about how best to pursue the suspect." *Id.*

Here, in contrast, under Plaintiffs' version of the facts, Gutierrez may have seen what he believed to be a gun (although it had the orange tip signifying a toy), but he did not see Sanders point it at anyone.  Sanders was standing among a group of school-aged youths with their backpacks and school uniforms.  Without more, we cannot say that this situation gives an officer "no time for reflection," as in a high-speed chase involving a fleeing suspect in a fast-moving vehicle.  *Cf. Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1011 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 2680 (2018) (holding that mistaking a child's toy gun for an assault rifle did not as a matter of law justify an officer's use of deadly force).

Gutierrez also relies on cases involving serious and immediate threats to public safety, but these cases too are easily distinguishable.  In *Porter v. Osborn*, the suspect engaged in "evasive actions" in response to questions and direct orders from police officers, including refusing to exit his vehicle and then driving his vehicle in the direction of one of the officers in a perceived attempt to run over the officer.  546 F.3d at 1134–35, 1137.  There, we held that the "rapidly escalating nature" of the confrontation between the officer and the suspect behind the wheel left too little time for adequate deliberation and thus necessitated application of the "intent to harm" standard.  *Id.*  In *Moreland v. Las*

*Vegas Metropolitan Police Department*, the officers were responding to "the extreme emergency" of an active "gunfight in progress threaten[ing] the lives of the 50 to 100 people who were trapped in the parking lot." 159 F.3d at 372–73. The suspect was indisputably firing a semiautomatic handgun and refusing to comply with the officers' orders to stop. *Id.* at 372. Given the ongoing crisis, we held that the officers had no opportunity to deliberate in light of the "immediate risk of serious harm or death to the many innocent individuals trapped in the parking lot." *Id.* Thus, the "intent to harm" standard was appropriate. By contrast, assuming Plaintiffs' contentions that Sanders was not pointing the toy gun at anyone and had not given any indication that he was likely to harm anyone, there was no "rapidly escalating" confrontation or "extreme emergency" here that would have deprived Gutierrez of the opportunity to confer with his partner and formulate a plan to ascertain what was happening before charging in with gunfire. Contrary to Gutierrez's argument, we have not previously applied the intent to harm standard to Fourteenth Amendment claims involving facts similar to this case, and we decline to do so now.

We thus agree that application of the deliberate indifference standard is warranted under these circumstances. As the district court explained, in "minimal information" situations, an officer must take some time to assess what is happening before employing deadly force. Holding otherwise would result in an "intolerably high risk of a tragic shooting that may otherwise have been avoided by proper deliberation whenever practical." As such, applying the deliberate indifference standard to Plaintiffs' version of the facts, we hold that Gutierrez's shooting violated their substantive due process rights under the Fourteenth Amendment.

**B.**

Even if a constitutional violation occurred, qualified immunity nevertheless applies unless the violation was clearly established. Because no analogous case existed at the time of the shooting, we hold that the district court erred in denying Gutierrez qualified immunity for this claim.

*Kisela v. Hughes* is instructive. 138 S. Ct. at 1151. In *Kisela*, the Supreme Court reversed our decision denying qualified immunity to an officer for an excessive force claim after he shot an individual armed with a knife as she approached a bystander. *Id.* The Court reiterated its repeated admonition to courts "and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Id.* at 1152 (quoting *City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775–76 (2015)). The Court explained that, where "the result depends very much on the facts of each case . . . officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Id.* at 1153 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (per curiam)).

Here, Plaintiffs failed to identify any authority that rendered the contours of the substantive due process right at issue "sufficiently definite that any reasonable official in the defendant's shoes would have understood he was violating it." *See Kisela*, 138 S. Ct. at 1153. In their briefing, Plaintiffs cited cases establishing broadly that "the Constitution protects a citizen's liberty interest in her own bodily security," which define the right at much too high a level of generality to clearly establish a rule of conduct. *See, e.g.*, *Ingraham v. Wright*, 430 U.S. 651, 673–74 (1977). They also discuss our "state-created danger exception" cases, but these involve failures to act that lead to injuries

from third parties, rather than affirmative actions by officers that directly cause injury to the plaintiff.  *See, e.g.*, *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006) (failure to warn allegedly caused shooting by neighbor); *Patel*, 648 F.3d 965 (failure to adequately supervise a disabled high school student allegedly caused sexual abuse by another student); *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989) (failure to leave plaintiff in safe location allegedly caused rape in a high-crime area).  These cases are too factually dissimilar to clearly establish a constitutional violation by an officer's accidental shooting of a bystander.

At oral argument, Plaintiffs conceded that it was "it was difficult to find a case that was squarely on point," where a court found a constitutional violation in the context of a bystander shooting.  Instead, the gravamen of Plaintiffs' analysis is that the use of deadly force against Sanders was likely unreasonable, relying principally on our cases analyzing Fourth Amendment claims of excessive force. *E.g.*, *Hughes v. Kisela*, 862 F.3d 775, 789 (9th Cir. 2016), *rev'd sub nom. Kisela v. Hughes*, 138 S. Ct. 1148 (2018); *Emmons v. City of Escondido*, No. 16-55771, 2018 WL 1531064 (9th Cir. Mar. 29, 2018), *rev'd sub nom. City of Escondido v. Emmons*, 139 S. Ct. 500 (2019).[4]  While these cases may help to identify whether the use of force against Sanders amounted to a Fourth Amendment violation, they do not clearly establish that a shooting in these

---

[4] Similarly, the district court also relied principally on Fourth Amendment cases in denying qualified immunity on this claim. However, as with Plaintiffs' citations, some of these cases were decided after the incident, *e.g.*, *Gelhaus*, 871 F.3d 998, and one has since been reversed by the Supreme Court on the "clearly established" question. *See Kisela*, 138 S. Ct. 1148.  These problems present additional reasons why we find that the law was not clearly established on Plaintiffs' Fourteenth Amendment claim.

circumstances constitutes deliberate indifference to Plaintiffs. Sanders is not a plaintiff in this lawsuit, and Plaintiffs would not have standing to raise a Fourth Amendment claim on his behalf. *See Plumhoff*, 572 U.S. at 778 ("Our cases make it clear that 'Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.'" (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). The Fourth Amendment cases therefore do not clearly establish the contours of the Fourteenth Amendment substantive due process rights at hand.[5]

Because no binding circuit or Supreme Court precedent has established a substantive due process violation under comparable circumstances, the Fourteenth Amendment right at issue lacked "contours . . . sufficiently definite" to place the issue "beyond debate." *See Kisela*, 138 S. Ct. at 1152–53 (quoting *Plumhoff*, 572 U.S. at 779). We accordingly reverse the district court and remand for an entry of qualified immunity on this claim.

---

[5] Certainly, considerations of reasonableness germane to a Fourth Amendment analysis are relevant to the substantive due process inquiry. Historically, our cases have recognized some overlap in these two constitutional protections. *See, e.g.*, *P.B. v. Koch*, 96 F.3d 1298, 1303 n.4 (9th Cir. 1996) (holding that, "[r]egardless of the appropriate 'home' for plaintiffs' right to be free from excessive force, there was a clearly established right to be free such force" because "[u]nder any standard, [the defendant's] alleged actions were clearly unlawful."). But we have held that a Fourteenth Amendment claim of excessive force "must be governed by a different standard than" a Fourth Amendment claim of excessive force. *Byrd v. Guess*, 137 F.3d 1126, 1133–34 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Little v. City of Manhattan Beach*, 21 Fed. App'x 651 (9th Cir. 2001). Thus, our Fourth Amendment cases cannot clearly establish the contours of the Fourteenth Amendment right, despite similarities between the standards.

## III.

## CONCLUSION

We reverse the district court's denial of qualified immunity to Gutierrez as to the Fourteenth Amendment claim and affirm the court's ruling as to the Fourth Amendment claim. We remand for proceedings consistent with this opinion.

**REVERSED in part, AFFIRMED in part, and REMANDED.**