**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IAN TUUAMALEMALO,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>SHAHANN GREENE, Officer,<br>*Defendant-Appellant.* | No. 18-15665<br><br>D.C. No.<br>2:16-cv-00619-JAD-VCF<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted March 15, 2019
San Francisco, California

Filed December 24, 2019

Before: William A. Fletcher, Paul J. Watford,
and Andrew D. Hurwitz, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge W. Fletcher

# SUMMARY[*]

## Civil Rights

The panel affirmed the district court's denial, on summary judgment, of qualified immunity to a police officer in an action brought pursuant to 42 U.S.C. § 1983 and state law alleging that defendant used excessive force when he placed plaintiff in a chokehold during an encounter.

The panel stated that this Circuit's decision in *Barnard v. Theobald*, 721 F.3d 1069 (9th Cir. 2013), squarely addressed the constitutionality of the use of a chokehold on a non-resisting person. The panel held that viewing plaintiff's version of the facts in the light most favorable to him, he was not resisting arrest when defendant placed him in a chokehold. Further, there was little chance he could initiate resistance with five other officers fully restraining him and pinning him to the ground. The panel concluded that given the state of the law in this Circuit, it was clearly established that the use of a chokehold on a non-resisting, restrained person violated the Fourth Amendment's prohibition on the use of excessive force. The panel further held that the same version of the facts that justified the district court's decision to deny defendant qualified immunity under § 1983 precluded a grant of immunity under Nevada law.

Concurring, Judge W. Fletcher wrote separately to address the continuing confusion over the proper standard for determining appealability of interlocutory orders denying

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

motions for summary judgment based on qualified immunity under § 1983.

## COUNSEL

Craig R. Anderson (argued), Marquis Aurbach Coffing, Las Vegas, Nevada, for Defendant-Appellant.

Paola M. Armeni (argued), Clark Hill PLLC, Las Vegas, Nevada, for Plaintiff-Appellee.

## OPINION

PER CURIAM:

Defendant Shahann Greene, a police officer in Las Vegas, Nevada, placed Ian Tuuamalemalo in a chokehold during an encounter following a concert. The chokehold rendered Tuuamalemalo unconscious, and it took some time and several attempts to revive him. Tuuamalemalo sued under 42 U.S.C. § 1983, alleging excessive force. Officer Greene moved for summary judgment based on qualified immunity. The district court denied the motion. Greene brought an interlocutory appeal. We affirm.

### I. Factual and Procedural Background

Some of the evidence is undisputed. Where the evidence is in conflict, we recount it in the light most favorable to Tuuamalemalo, the non-moving party.

On the evening of January 25, 2014, Tuuamalemalo went to a reggae concert at "The Joint," a music venue in the Hard Rock Hotel and Casino in Las Vegas, Nevada. Tuuamalemalo was joined by his wife, his cousin, and his cousin's husband in an upstairs booth. As the group listened to the concert, they had a few drinks.

While Tuuamalemalo was at the concert, the Homeland Saturation Team of the Las Vegas Metropolitan Police Department ("LVMPD"), a unit specializing in riot control, was finishing its shift. Sergeant Tom Jenkins was in the squad locker room getting ready to go home when he received a call from LVMPD Gang Sergeant Andrew Burnett requesting backup at The Joint to ensure that a fight would not break out. Sergeant Jenkins placed his team back on duty and drove to the Hard Rock Hotel. Officer Greene drove with Officer Sergio MPhillips to join Sergeant Jenkins at the hotel. Video surveillance from the hotel shows a large number of police officers at the scene.

After the officers arrived at the hotel, Sergeant Burnett approached Darin Afemata, a member of Tuuamalemalo's party. Tuuamalemalo approached the officers and tried to talk to them. One of the officers told him "to shut the 'F' up." A surveillance video shows police officers and members of Tuuamalemalo's group pushing one another. Tuuamalemalo made his way to the front of his group. After reaching the front of the group, Tuuamalemalo was pushed by one of the officers.

Tuuamalemalo and other patrons were moved to a hallway outside The Joint but still inside the hotel. They were closely followed by a group of officers. As Tuuamalemalo was pushed along the hallway with a mixed

group of patrons and police officers, he collapsed.  With the help of officers and patrons, Tuuamalemalo was able to stand up.  He began walking toward the hotel exit with help from two friends, one on each side.

A group of officers followed Tuuamalemalo and his friends as they walked toward the exit.  Sergeant Jenkins pushed through the group and grabbed the back of Tuuamalemalo's shirt.  The video shows Tuuamalemalo turning around.  Sergeant Jenkins then punched Tuuamalemalo on the left side of his face.  After Jenkins punched Tuuamalemalo, five officers took Tuuamalemalo to the ground.  Officer Greene put Tuuamalemalo in a chokehold.

The video shows Tuuamalemalo on the floor with a number of officers on top of him.  Nothing in the video shows resistance by Tuuamalemalo.  Officer Greene's chokehold was a lateral vascular neck restraint ("LVNR"), which restricts the flow of blood to the brain rather than restricting air flow.  The chokehold rendered Tuuamalemalo unconscious.  It took several attempts to revive him.

Tuuamalemalo testified in his deposition, "My legs aren't moving, I'm not fighting back.  I'm not trying to resist, kicking, nothing.  The whole time I had my hands spread out."  "Then we all went down, and I remember somebody yelling, 'Choke his ass out.'"  Tuuamalemalo testified that the next thing he remembered was waking up.

Tuuamalemalo was arrested for (1) disorderly conduct, (2) resisting arrest, (3) provoking commission of breach of peace, and (4) malicious destruction of property.  He was transported to Clark County Detention Center and was

released on bail the next day. All charges were ultimately dismissed.

On January 25, 2015, Tuuamalemalo filed suit in Nevada state court. Defendants removed the case to federal court, and Tuuamalemalo subsequently filed an Amended Complaint ("AC"). The AC named Sergeant Jenkins, Officer MPhillips, Officer Greene, and LVMPD as defendants. The complaint included false arrest and excessive force claims against the officers; a failure to train claim against LVMPD; and analogous state law claims for assault, battery, and intentional infliction of emotional distress.

Following discovery, defendants moved for summary judgment. The individual defendants claimed qualified immunity under federal law and discretionary immunity under state law. On March 27, 2018, the district court issued an order granting summary judgment in favor of Officer MPhillips, Sergeant Jenkins, and LVMPD, but denied summary judgment to Officer Greene. The claims against Greene all relate to his use of the chokehold on Tuuamalemalo. Greene brought an interlocutory appeal of the denial of his motion for summary judgment.

## II. Appellate Jurisdiction

Tuuamalemalo argues that we lack jurisdiction to review the district court's interlocutory order denying summary judgment to Officer Greene under § 1983 and under state law. Greene freely admits that he administered the chokehold. Tuuamalemalo points out that the district court held that there was a genuine issue of material fact as to whether Tuuamalemalo was resisting at the time Greene applied the chokehold, and therefore as to whether Greene is entitled to

qualified immunity. Therefore, he contends, we lack appellate jurisdiction. We have jurisdiction under *Plumhoff v. Rickard*, 572 U.S. 765 (2014), to review the decision of the district court, viewing the facts in the light most favorable to Tuuamalemalo, the nonmoving party.

We also have interlocutory appellate jurisdiction to review the district court's denial of Officer Greene's motion for summary judgment on Tuuamalemalo's state-law claims. For claims of immunity under state law, "the availability of an appeal depends on whether, under *state* law, the immunity functions as an immunity from suit or only as a defense to liability." *Liberal v. Estrada*, 632 F.3d 1064, 1074 (9th Cir. 2011) (emphasis in original). "A denial of summary judgment is immediately appealable when the immunity is an immunity from suit, but not when it is a mere defense to liability." *Id.* (citing *Mitchell*, 472 U.S. at 526). Both parties agree that under Nevada law, immunity for discretionary acts provides police officers with immunity from suit. *See ASAP Storage, Inc. v. City of Sparks*, 173 P.3d 734, 745–46 (Nev. 2007) (holding that Nevada's discretionary immunity statute provides immunity from suit). Just as with the denial of qualified immunity under § 1983, we may review the district court's denial of discretionary immunity under state law.

## III. Standard of Review

In reviewing summary judgment rulings by the district court, "we assume the version of the material facts asserted by the non-moving party to be correct." *Jeffers v. Gomez*, 267 F.3d 895, 905 (9th Cir. 2001) (emphasis omitted) (quoting *Schwenk v. Hartford*, 204 F.3d 1187, 1195 (9th Cir. 2000)). In qualified immunity cases, as in other cases, "we view the facts in the light most favorable to the nonmoving

party." *Plumhoff*, 572 U.S. at 768. We review de novo the district court's determinations regarding official immunity. *Deorle v. Rutherford*, 272 F.3d 1272, 1278 (9th Cir. 2001) (qualified immunity); *Martinez v. Maruszczak*, 168 P.3d 720, 724 (Nev. 2007) (discretionary immunity under Nevada state law).

## IV.  Qualified Immunity under § 1983

To determine whether Officer Greene is entitled to summary judgment based on qualified immunity under § 1983, we ask two questions. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Scott v. Harris*, 550 U.S. 372, 377 (2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, "[i]f . . . the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201) (second ellipsis in original). This sequence is the analytically logical way to proceed, but we have discretion to decide the second question first, thereby avoiding the first question. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Officer Greene does not dispute that, viewing the evidence in the light most favorable to Tuuamalemalo, his use of a chokehold violated the Fourth Amendment. Therefore, we turn to the second question: whether Greene's use of a chokehold violated a clearly established right "in light of the specific context of the case." *Scott*, 550 U.S. at 377 (quoting *Saucier*, 533 U.S. at 201).

To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Supreme Court has repeatedly cautioned us "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (citation omitted). "To determine whether Officer [Greene] violated clearly established law, we look to cases relevant to the situation [Greene] confronted, mindful that there need not be a case directly on point." *A.K.H. rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1013 (9th Cir. 2016) (internal citations and quotation marks omitted). The right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority. *District of Columbia v. Wesby*, 138 S. Ct. 577, 590–91 (2018). Viewing the evidence in the light most favorable to Tuuamalemalo, we conclude that Officer Greene violated clearly established Fourth Amendment law when he placed Tuuamalemalo in a chokehold and rendered him unconscious.

Our decision in *Barnard v. Theobald*, 721 F.3d 1069 (9th Cir. 2013), squarely addressed the constitutionality of the use of a chokehold on a non-resisting person. In that case, officers placed the non-resisting, restrained plaintiff in a chokehold and then pepper sprayed him. *Id.* at 1072–73. We affirmed the jury's finding that the officers' use of force violated the Fourth Amendment. *Id.* at 1076. Even earlier, in *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1059 (9th Cir. 2003), we had held that "any reasonable person . . . should have known that squeezing the breath from a compliant, prone, and handcuffed individual despite his

pleas for air involves a degree of force that is greater than reasonable." These cases are directly on point.

Viewing Tuuamalemalo's version of the facts in the light most favorable to him, he was not resisting arrest when Officer Greene placed him in a chokehold. Further, there was little chance he could initiate resistance with five other officers fully restraining him and pinning him to the ground. Given the state of the law in our circuit, it was clearly established that the use of a chokehold on a non-resisting, restrained person violates the Fourth Amendment's prohibition on the use of excessive force.

Our circuit is not alone in reaching this conclusion. There is a robust consensus among the circuits that the use of a chokehold on a non-resisting person violates the Fourth Amendment. *See Coley v. Lucas Cty.*, 799 F.3d 530, 541 (6th Cir. 2015) ("Chokeholds are objectively unreasonable where an individual is already restrained or there is no danger to others."); *United States v. Livoti*, 196 F.3d 322, 324–27 (2d Cir. 1999) (finding that use of a chokehold against a handcuffed, non-resistant subject was an excessive use of force); *Valencia v. Wiggins*, 981 F.2d 1440, 1447 (5th Cir. 1993) (holding use of a "choke hold and other force . . . to subdue a non-resisting [detainee] and render him temporarily unconscious was unreasonable and was an excessive use of force"). Given the consensus of authority holding that use of a chokehold against a non-resisting, restrained person violates the Fourth Amendment, Tuuamalemalo's right to be free from excessive force under the circumstances he describes was clearly established.

Officer Greene asks us to assume that Tuuamalemalo was resisting. But the standard on summary judgment requires us

to view the facts in the light most favorable to the plaintiff. At this stage of the proceedings, we must assume that Tuuamalemalo was not resisting when Officer Greene used a chokehold on him. *See Wall v. City of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004). Greene also argues that the district court did not appropriately credit the ten minutes of video leading up to the use of the chokehold on Tuuamalemalo, during which Tuuamalemalo was aggressive with officers. But the district court did consider the previous portions of the video (as have we). Indeed, on that ground, the court granted qualified immunity to Officer Jenkins, who struck Tuuamalemalo shortly before he was placed in a chokehold. There is no reason to believe that the district court improperly discounted any of the other record evidence in this case.

## V.  Immunity Under State Law

The district court also denied Officer Greene's motion for summary judgment on Tuuamalemalo's state law claims for assault and battery and for intentional infliction of emotional distress. Under Nevada law, police officers "are privileged to use that amount of force which reasonably appears necessary," and are liable only to the extent they use more force than reasonably necessary. *Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996). To the extent that Tuuamalemalo's version of the facts precludes a finding that Greene's use of a chokehold was reasonable under the federal law, the same version of the facts precludes summary judgment on Tuuamalemalo's state law claims.

Officer Greene argues that even if there were issues of fact as to whether his use of force was reasonable, he was nevertheless entitled to immunity under Nevada law, which

bars claims against state officers based on acts or omissions relating to a "discretionary function," even if that discretion is abused. Nev. Rev. Stat. § 41.032(2). "But decisions made in bad faith, such as 'abusive' conduct resulting from 'hostility' or 'willful or deliberate disregard' for a citizen's rights, aren't protected under the immunity statute even if they arise out of a discretionary function." *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1133 (9th Cir. 2017) (quoting *Davis v. City of Las Vegas*, 478 F.3d 1048, 1060 (9th Cir. 2007)).

With respect to Tuuamalemalo's claims under state law, "we look only to whether a reasonable jury could find that the officers' use of force indicated hostility or willful disregard" of his rights. *Id.* Applying a chokehold to a non-resisting, pinned person violated Tuuamalemalo's clearly established federal rights, and a jury could conclude that Officer Greene's decision was so excessive that it amounted to willful or deliberate disregard of those rights. *See Davis*, 478 F.3d at 1060 ("No officer has the 'rightful prerogative' to engage in a malicious battery of a handcuffed citizen who is neither actively resisting arrest nor seeking to flee."). Further, as the district court noted, acts that violate the law are generally not the kinds of discretionary acts entitled to immunity. *See Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000) ("In general, governmental conduct cannot be discretionary if it violates a legal mandate."). In sum, the same version of the facts that justified the district court's decision to deny Greene qualified immunity under § 1983 precludes a grant of immunity under Nevada law.

## VI.  Conclusion

It has long been clear that a police officer may not seize a non-resisting, restrained person by placing him in a chokehold.  *Barnard*, 721 F.3d at 1076.  Viewing the evidence in the light most favorable to Tuuamalemalo, that is precisely what Officer Greene did here.  We affirm the district court's denial of qualified immunity and remand for further proceedings consistent with this opinion.

**AFFIRMED and REMANDED.**

W. FLETCHER, Circuit Judge, concurring:

I fully concur in the court's opinion.  I write separately to address the continuing confusion over the proper standard for determining appealability of interlocutory orders denying motions for summary judgment based on qualified immunity under § 1983.

The story begins with *Mitchell v. Forsyth*, 472 U.S. 511 (1985), where the Supreme Court held that an order denying a public official's motion for summary judgment based on qualified immunity is immediately appealable despite the interlocutory character of the order.  *Id*. at 524–30.  The standard for granting or denying a motion for summary judgment by the district court was not affected by *Mitchell*.  However, there was uncertainty about the circumstances in which an interlocutory appeal could be heard.  In *Johnson v. Jones*, 515 U.S. 304 (1995), the Court noted that "courts of appeals hold different views about the immediate appealability of . . . 'evidence insufficiency' claims made by

public official defendants who assert qualified immunity defenses." *Id*. at 308. The Court "therefore granted certiorari." *Id.* at 309.

The plaintiff in *Johnson* sued five police officers for use of excessive force. *Id*. at 307. Three of the officers moved for summary judgment, arguing that there was no evidence that they had beaten plaintiff or had even been present when other officers had allegedly done so. *Id.* The district court denied qualified immunity, finding that there was a genuine dispute of material fact as to whether the officers were present. The three officers appealed the court's interlocutory order. *Id*. at 308. The Seventh Circuit held that it lacked appellate jurisdiction on interlocutory review over questions of "evidence sufficiency." *Id*.

Because *Mitchell* did not change the summary judgment standard, a district court denying a defendant police officer's motion must view the evidence in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157 (1970). The most obvious way to implement *Mitchell* would have been to allow an interlocutory appeal from a denial of defendant's motion, whether the district court (1) used plaintiff's version of the facts, construing evidence in the light most favorable to the plaintiff, or (2) used the defendant's version of the facts. *See Mitchell*, 472 U.S. at 527 (addressing these two alternatives). Yet the Court in *Johnson* cited only the second of these alternatives as a basis for interlocutory appellate jurisdiction, leaving out the alternative of relying on the plaintiff's version of the facts and construing the evidence in the light most favorable to the plaintiff. The Court wrote:

All [the Court of Appeals] need determine is a question of law:  whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, in cases where the district court has denied summary judgment for the defendant *on the ground that even under the defendant's version of the facts* the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took.

*Johnson*, 515 U.S. at 312 (quoting *Mitchell*, 472 U.S. at 528) (emphasis added).  The Court wrote further:

We now consider the appealability of a portion of a district court's summary judgment order that, though entered in a "qualified immunity" case, determines only a question of "evidence sufficiency," *i.e.*, which facts a party may, or may not, be able to prove at trial.  This kind of order, we conclude, is not appealable.  That is, the District Court's determination that the summary judgment record in this case raised a genuine issue of fact concerning petitioners' involvement in the alleged beating of respondent was not a "final decision" within the meaning of the relevant statute.

*Id.* at 313.

The most natural reading of the passages just quoted is that a court of appeals has interlocutory appellate jurisdiction over an order denying summary judgment only when a district court denies a defendant's motion for summary judgment based on the defendant's version of the facts. A court of appeals does not have jurisdiction if a plaintiff's version of the facts would defeat qualified immunity but that version of the facts is disputed.

This is a very odd understanding of *Mitchell*, for it would rarely result in an appealable interlocutory order. Defendant police officers asserting qualified immunity rarely provide versions of the facts that would result in interlocutory orders denying their motions for summary judgment. Almost all interlocutory orders denying defendants' motions for summary judgment are based on plaintiffs' versions of the facts, viewing the evidence in the light most favorable to plaintiffs. That is, almost all orders denying summary judgment to police officer defendants are entered in cases where there are disputed questions of fact. Yet, it is in precisely such cases that *Johnson*—under the most natural reading of the passages just quoted—tells us that courts of appeals do not have jurisdiction.

The Court's decision in *Johnson* has created persistent confusion in the courts of appeals. On the one hand, the courts of appeals understand the purpose of *Mitchell*. They understand the importance of interlocutory appellate jurisdiction in cases where, in the view of the district court, plaintiff's version of the facts, construed in the light most favorable to plaintiff, would defeat qualified immunity. On the other hand, they are confronted with the language of *Johnson* that appears to preclude the exercise of appellate jurisdiction in exactly those cases.

A sample of appellate cases reveals the analytic chaos that has resulted. *See, e.g.*, *Diaz v. Martinez*, 112 F.3d 1, 3 (1st Cir. 1997) ("The dividing line that separates an immediately appealable order from a nonappealable one in these purlieus is not always easy to visualize."); *Camilo-Robles v. Hoyos*, 151 F.3d 1, 8 (1st Cir. 1998) ("Cases are clear enough at the extremes. . . . [But d]etermining the existence *vel non* of appellate jurisdiction in cases closer to the equator is more difficult. . . . If this were not complex enough, the district judge is not legally obliged to explain the basis on which a denial of summary judgment rests."); *Cunningham v. City of Wenatchee*, 345 F.3d 802, 809 (9th Cir. 2003) ("The confusion arises from the language in *Johnson* that where the summary judgment order determines only a question of evidentiary sufficiency then this order, even though entered in a qualified immunity case, is not appealable."); *Walton v. Powell*, 821 F.3d 1204, 1209 (10th Cir. 2016) ("[W]e have struggled ourselves to fix the exact parameters of the *Johnson* innovation."); *Barry v. O'Grady*, 895 F.3d 440, 446 (6th Cir. 2018) ("Each of our too-many-to-count additional glosses on *Johnson* is needlessly complicated. . . .") (Sutton, J., dissenting).

The Supreme Court did not at first appear to understand the problem it had created in *Johnson*. In several cases, it reviewed without comment court of appeals decisions in cases where the district court had denied motions for summary judgment using plaintiffs' versions of the facts, viewing the evidence in the light most favorable to plaintiffs—in other words, in cases where plaintiffs' evidence was disputed.

In *Saucier v. Katz*, 533 U.S. 194 (2001), plaintiff sued Saucier, a military police officer, under *Bivens v. Six*

*Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), alleging excessive use of force. Saucier moved for summary judgment based on qualified immunity. The district court denied summary judgment, holding that there was "a dispute on a material fact . . . concerning whether excessive force was used." 533 U.S. at 199. Saucier brought an interlocutory appeal, which the Ninth Circuit heard and decided. On certiorari, the Supreme Court recited the standard for summary judgment where there are disputed facts: "A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. The Court then decided Saucier's interlocutory appeal without questioning its own appellate jurisdiction or that of the Ninth Circuit.

In *Brosseau v. Haugen*, 543 U.S. 194 (2004), plaintiff Haugen sued Brosseau, a police officer, under 42 U.S.C. § 1983, alleging excessive use of force. The district court granted summary judgment to Brosseau based on qualified immunity. The Ninth Circuit, viewing the evidence in the light most favorable to plaintiff, reversed and remanded for trial. The Supreme Court granted certiorari and reversed, reciting: "The material facts, construed in a light most favorable to Haugen, are as follows." *Id.* at 195. Later in its opinion, the Court recited the language from *Saucier*: "[t]aken in the light most favorable to the party asserting the injury." *Id.* at 197. The Court decided the case without questioning its own appellate jurisdiction or that of the Ninth Circuit.

In *Scott v. Harris*, 550 U.S. 372 (2007), the plaintiff sued Scott, a police officer, under 42 U.S.C. § 1983, alleging

excessive use of force.  Scott moved for summary judgment based on qualified immunity. "The District Court denied the motion, finding that there are material issues of fact on which the issue of qualified immunity turns which present sufficient disagreement to require submission to a jury." *Id.* at 376 (internal quotation marks omitted).  Scott brought an interlocutory appeal.  The Eleventh Circuit "[took plaintiff's] view of the facts as given" and affirmed. *Id.*

Before the Supreme Court, the parties in *Scott* argued vigorously for and against appellate jurisdiction, based on conflicting interpretations of *Johnson*.  Resp't's Br., 2007 WL 118977, at *1–3; Pet'r's Reply Br., 2007 WL 760511, at *1–5.  The American Civil Liberties Union filed an amicus brief devoted solely to arguing, based on *Johnson*, that there was no interlocutory appellate jurisdiction.  The ACLU wrote:

> Here, the district court's denial of Petitioner Scott's summary judgment motion expressly determined that the pretrial record set forth a genuine issue of fact for trial.  . . .  As in *Johnson v. Jones*, therefore, the district court order in this case identified a fact-related dispute about the pre-trial record.  Its holding that the evidence in the pre-trial record was sufficient to show a genuine issue of fact for trial is, thus, not appealable.

ACLU Amicus Br., 2007 WL 139201, at *6.

The Supreme Court did not acknowledge the parties' dispute about interlocutory appellate jurisdiction under *Johnson*.  It simply decided the case.  It wrote:

> The first step in assessing the constitutionality of Scott's actions is to determine the relevant facts. As this case was decided on summary judgment, there have not yet been factual findings by a judge or jury, and respondent's version of events (unsurprisingly) differs substantially from Scott's version. When things are in such a posture, courts are required to view the facts and draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion." In qualified immunity cases, this usually means adopting (as the Court of Appeals did here) the plaintiff's version of the facts.

*Scott*, 550 U.S. at 378 (alterations in original and citations omitted).

In none of these three cases, including *Scott*, did the Supreme Court cite, or in any way acknowledge, the problematic language in *Johnson*.

In *Plumhoff v. Rickard*, 572 U.S. 765 (2014), the Court finally addressed the tension between *Johnson* and its own post-*Johnson* practice. Plaintiff was the daughter of the driver of a fleeing car who had been shot and killed by police officers. She brought suit under 42 U.S.C. § 1983, alleging excessive use of force. The district court denied the officers' motion for summary judgment based on qualified immunity. A motions panel of the Sixth Circuit initially dismissed the officers' appeal under *Johnson* on the ground that it lacked jurisdiction. On rehearing, the motions panel vacated its dismissal and referred the jurisdictional issue to a merits

panel. The merits panel interpreted *Scott* as having created an "exception" to *Johnson*, allowing an interlocutory appeal "to challenge blatantly and demonstrably false factual determinations." *Id.* at 771 (internal quotation marks omitted). The merits panel heard the appeal and affirmed the district court.

As in *Scott*, the parties argued vigorously in the Supreme Court for and against interlocutory appellate jurisdiction. Resp't's Br., 2014 WL 411285, at *4–5; Pet'r's Reply Br., 2014 WL 689547, at *1–3. Ohio and twenty-one other states filed an amicus brief  devoted almost entirely to *Johnson*. They wrote in their brief:

> The Court should resolve this jurisdictional issue because the circuit courts have erratically applied *Johnson*.  And their confusion about *Johnson*'s domain has only increased after *Scott v. Harris*, 550 U.S. 372 (2007), which rejected a district court's version of the disputed facts in the process of finding a police officer entitled to qualified immunity.

States' Amicus Br., 2014 WL 69402, at *2.

Instead of explaining—or, better yet, abandoning—*Johnson*, the Court distinguished it. The Court wrote, "The District Court order in this case is nothing like the order in *Johnson*." *Plumhoff*, 572 U.S. at 773. In *Johnson*, the three police officers appealing the interlocutory order denying summary judgment contended that they had not been present when the beating took place and had had nothing to do with it. By contrast, the Court wrote in *Plumhoff*, "Petitioners do

not claim that other officers were responsible for shooting Rickard; rather, they contend that their conduct did not violate the Fourth Amendment and, in any event, did not violate clearly established law." *Id.*

In deciding the officers' interlocutory appeal, the Court in *Plumhoff* accepted plaintiff's version of the facts, viewed in the light most favorable to the plaintiff. The Court wrote:

> Because this case arises from the denial of the officers' motion for summary judgment, we view the facts in the light most favorable to the nonmoving party, the daughter of the driver who attempted to flee.

*Id.* at 768. The Court wrote further:

> The District Court order here is not materially distinguishable from the District Court order in *Scott v. Harris*, and in that case we expressed no doubts about the jurisdiction of the Court of Appeals under § 1291. Accordingly, here, as in *Scott*, we hold that the Court of Appeals properly exercised jurisdiction, and we therefore turn to the merits.

*Id.* 773.

The Ninth Circuit had largely made its peace with *Johnson* without waiting for *Plumhoff*. For example, in *George v. Morris*, 736 F.3d 829, 835–36 (9th Cir. 2013), we wrote that *Scott* had not overruled or abandoned *Johnson*. But in *George*, we did exactly what the Court in *Johnson* had

told us *not* to do, and did exactly what the Court had done in *Scott*. The material facts in George were disputed. Donald George, a terminally ill brain cancer patient, had gotten out of bed in the middle of the night. *Id*. at 832. His wife saw him retrieve a pistol from his truck and load it with ammunition. She called 911. Santa Barbara Sheriff's Deputies responded to the call. Deputy Morris and two other deputies shot and killed George as he stood on a balcony of his house, holding his pistol. George's widow brought suit under § 1983, alleging excessive force. *Id*. at 833.

George's widow presented evidence that George had stood on the balcony with one hand holding his walker and the other holding the gun, and that George had never "manipulated the gun, or pointed it directly at deputies." *Id*. Deputy Morris, on the other hand, testified in a deposition that George had pointed the gun at him: "I'm crouched down and I'm, I remember seeing the, the black hole actually looking down the barrel as it's pointed right at me and that was when, that was when I fired my first shot." *Id*. at 833 n.4. We held that *Johnson* forbade us to credit Morris's evidence: "Morris offers a vivid account of Donald's final moments that we *cannot* credit because the district court found it to be genuinely disputed." *Id.* (emphasis in original). Purporting to follow *Johnson*, we credited plaintiff's version of the disputed facts and affirmed the district court's denial of Morris's motion for summary judgment. We held:

> If the deputies indeed shot the sixty-four-year-old decedent without objective provocation while he used his walker, with his gun trained on the ground, then a reasonable jury could

> determine that they violated the Fourth
> Amendment.

*Id.* at 839.

In so holding, we did what *Johnson* told us not to do. We exercised appellate jurisdiction where there were disputed questions of material fact. We read *Johnson* as telling us only that we should not credit Morris's version of the facts. But, of course, we did not need *Johnson* to tell us this, for it was already the law. Morris was the party moving for summary judgment. It is black letter law that the district court credits the non-moving party's version of the facts in deciding whether to grant a motion for summary judgment, and that an appellate court does the same when reviewing the decision of the district court. That is what the Supreme Court did in *Scott*. And that is what the Court did again in *Plumhoff*, affirming the correctness of its approach to jurisdiction in *Scott* and saving the *Johnson* approach for use only in cases where the officer denied being present during, or having anything to do with, the allegedly excessive use of force. In light of *Plumhoff*, it is now clear, in retrospect, that what we did in *George* was correct.

In numerous other cases, we have done much as we did in *George*. *See, e.g.*, *Armstrong v. Asselin*, 734 F.3d 984, 988–89 (9th Cir. 2013); *Abudiab v. Georgopoulos*, 586 F. App'x 685, 685–86 (9th Cir. 2013); *Downs v. Nev. Taxicab Auth.*, 554 F. App'x 566, 567 (9th Cir. 2014); *Prancevic v. Macagni*, 567 F. App'x 498, 499 (9th Cir. 2014); *see also Foster v. City of Indio*, 908 F.3d 1204, 1209–10 (9th Cir. 2018); *Rodriguez v. Cty. of L.A.*, 891 F.3d 776, 791 (9th Cir. 2018); *Nicholson v. City of L.A.*, 935 F.3d 685, 690 (9th Cir.

2019); *Advanced Bldg. & Fabrication, Inc. v. Cal. Highway Patrol*, 918 F.3d 654, 657–58 (9th Cir. 2019).

We have recently recognized that *Plumhoff* has modified *Johnson*. *See Foster*, 908 F.3d at 1209–10. But we have not done more than that. We have not interpreted *Plumhoff* as restricting *Johnson* to its facts. But if we are to be faithful to what the Court wrote in *Plumhoff*, that is what we should do. Under *Plumhoff*, when a district court holds in summary judgment that a plaintiff's version of the facts, construed in the light most favorable to the plaintiff, shows that a defendant officer has used excessive force, we generally may exercise interlocutory appellate jurisdiction under *Scott*. Only when an officer provides evidence in the district court showing that he or she was not present and in no way participated in or authorized the challenged conduct, and when the district court nonetheless denies the officer's motion for summary judgment because plaintiff presents evidence to the contrary, are we without jurisdiction to hear the officers' interlocutory appeal.

It is distinctly counterintuitive that this should be the remnant of *Johnson* that survives. Officers who present evidence that they were neither present nor in any way involved in the use of allegedly excessive force, and who contend that plaintiffs' evidence, though contested, construed in the light most favorable to them, does not show the contrary, are those officers who most deserve the protection of interlocutory appeals when their motion for summary judgment is denied. But I have difficulty reading the combination of *Johnson* and *Plumhoff* any other way. As to these officers, the district court's denial of summary judgment "was not a 'final decision' within the meaning of the relevant statute." *Johnson*, 515 U.S. at 313.

I hope that the Supreme Court will revisit the issue soon
and will disavow *Johnson* entirely.  But until that happens, I
believe that we are, unfortunately, bound to follow what
remains of *Johnson.*